Coleman *v.* Garrigues.

Whether the act was intentional, or the result of negligence, I think the defendant is bound to compensate the plaintiffs for the injury they have sustained, and that the plaintiffs are entitled to judgment.

Judgment for the plaintiffs.

[ALBANY GENERAL TERM, December 5, 1853.  *Parker*, *Wright* and *Harris*, Justices.]

## COLEMAN *vs.* GARRIGUES and others.

Where a broker, employed to sell real estate, is empowered to "close the bargain" in case he can get a specified sum, cash on delivery of the deed, and he signs a contract, in the name of his principal, selling the property for the price named, in cash, and agreeing to give a warranty deed with full covenants and a perfect title, at any time upon demand, within thirty days from the date, this is such a departure from the authority that the contract will not bind the principal.

A broker, employed to make, or close, a bargain for the sale of real estate, is not authorized to sign the name of his principal to a contract for the sale of the property.

A person having a mere authority to make a bargain for the sale of real estate is not an agent for the sale of the property, within the meaning of the section of the statute of frauds allowing the name of the vendor to be subscribed by an agent lawfully authorized.

The agent must be authorized to *sign* the vendor's name to the contract.

That agency may be by parol, but it is not included in a mere authority to sell.

THIS was an action to enforce the specific performance of an agreement for the sale of real estate. The complaint alleged that about the middle of September, 1848, John M. Secor, being the owner of a lot of ground at the corner of Broadway and Thirty-ninth street, in the city of New-York, employed one Rowland S. Malloy, a real estate broker, to sell such lot for him, and authorized him, as his agent, to sell the same on said Secor's account, for the sum of $3000. That under such authority Malloy did, on the 29th of September, 1848, sell the said

Coleman *v.* Garrigues.

lot to the plaintiff for $3000, and upon such sale did make and subscribe a memorandum in the following words and figures, to wit :

"Memorandum, that I have this day sold to Thomas J. Coleman the plot of ground at the northwest corner of 39th street and Broadway, in the city of New-York, containing fifty feet in front and rear, and one hundred and thirty-five feet on Thirty-ninth street, for the sum of $3000, to be paid in cash on the delivery of the deed. And in consideration of one dollar, which he has paid me, I agree to make and deliver to him a good and sufficient warranty deed of the said premises, with full covenants, and a perfect title, at any time, upon demand, within thirty days from date hereof. Dated New-York, 29th September, 1848.

For John M. Secor,<br>R. S. Malloy.

In presence of J. B. Powell."

That upon this memorandum of agreement being made and delivered to said plaintiff, he made and delivered to Secor, by said Malloy, an agreement on the plaintiff's part to buy said plot of ground. The complaint then alleged, that having caused the necessary searches to be made in the register's office, &c. he found that the lot was subject to the lien of three several judgments recovered against a former owner, which, with the interest thereon, were still due and unpaid. The plaintiff then alleged a tender of the $3000, and of a waranty deed of the premises, and requested Secor to execute the same, but that he refused to convey the lot, unless the plaintiff would pay $3500 therefor. The complaint prayed that Secor might be ordered to convey the premises to the plaintiff, upon being paid the said sum of $3000, by a deed with full warranty, with full covenants, and with a perfect title, and free from any incumbrance ; or that he be compelled to pay the difference between $3000 and the highest price at which the lot might have been sold, after the time of making the contract, &c. Secor answered, denying the allegations in the complaint, and alleging that he did not employ Malloy to sell the lot for him, nor authorize him as his,

Coleman *v.* Garrigues.

Secor's, agent to sell the same on his account for the sum of $3000 as alleged in the complaint. On the trial, at the New-York circuit, in March, 1850, before Justice Edwards, Malloy was examined as a witness for the plaintiff. He testified that Secor mentioned to him that he owned the lots in question, which he wished the witness to sell for $3000. That the witness finally got an offer of $3000 from the plaintiff, who wanted two-thirds or three-quarters of the amount to remain on mortgage; that the witness called on Secor, who said he must have all cash on delivery of the deed, and that if Malloy could get $3000 cash, on the *delivery of the deed*, he might *close the bargain;* that the witness accordingly, on the same day, or the next, closed the bargain, by executing the memorandum above mentioned. That when he informed Secor of the sale, and requested him to execute a contract, he refused to do so; saying that he never authorized Malloy to sell the lot for $3000; but told him that if he could sell it for $3500 he might do so. A witness who testified that he had dealt in real estate extensively, and had employed brokers, was asked, "According to the custom of dealers in real estate, what does a broker who is employed to sell real estate do?" The plaintiff's counsel objected to any evidence of custom to vary the common meaning of the language used by Secor, in the employment of the broker. The counsel for the plaintiff excepted, and the witness answered that, as he understood it, the employment of a broker to sell did not, according to the custom of dealers in real estate, authorize him to sign a contract, or to use the seller's name in any way; that it only authorized him to find a purchaser. That authority to close a bargain, merely authorized the broker to tell the purchaser that the seller was ready to sign a contract; but did not authorize a signature by the broker. Another witness, who was a real estate broker, testified that his understanding of the custom of brokers was, that if they have an offer they are to report it to their principals, and that when they get an offer that is satisfactory, the owner is introduced; but that they are not authorized to sign an agreement, without the consent of the owners.

Coleman *v.* Garrigues.

His honor, the judge, charged the jury, that it appeared that an authority to a broker to sell real estate does not authorize him to enter into a written contract with the purchaser, in the name of his principal. That upon the testimony introduced by the defendant, he could come to no other conclusion than that an authority to close a bargain was an authority to signify the assent of the principal, and that he was ready to sign the contract, and did not authorize the broker to sign the contract himself. To which charge the counsel for the plaintiff excepted. The jury rendered a verdict for the defendant; and from the judgment rendered thereon the plaintiff appealed. The action was brought against Secor, and upon his death it was revived and continued against the defendants, as his heirs.

*E. Sandford*, for the appellant. I. The question whether, in the other transactions in which the witness stated that he had been employed by John M. Secor, he signed the name of the said Secor for him, was incompetent; and the judge erred in admitting the evidence. (1 *Greenl. Ev.* § 292, *and note* 4.) II. The judge erred in admitting in evidence the contracts between John M. Secor and Hallett and the said Secor and Appleby. (*Beirne* v. *Dord*, 2 *Sand. S. C. R.* 89, 97. *Suydam* v. *Clark, Id.* 133, 137. *Beirne* v. *Dord*, 1 *Selden*, 95, 102. *Vail* v. *Rice, Id.* 155, 160, 3.) III. The judge erred in admitting in evidence the declarations of Secor to Malloy, as testified to by the witness Odell; they were made after the contract in question had been signed and delivered. IV. The question put to the witness Havens—" According to the custom of dealers in real estate, what does a broker who is employed to sell real estate do ?"—was incompetent and improperly admitted. It assumed that a custom existed on that subject, when none was proved. It was asked for the purpose of either contradicting or laying the foundation for an inference against the proof of express authority to make and sign this particular contract given on the part of the plaintiff. By the law of this state the broker is an agent of the party employing, and may sign the contract on behalf of his principal, which that principal has authorized him to

make. No custom or local usage in the sale of any particular description of property can be admitted to control the general rules of law. (*Beirne* v. *Dord*, 1 *Selden*, 95, 102. *Thompson* v. *Ashton*, 14 *John.* 316, 318. *Woodruff* v. *Merch. Bank*, 25 *Wend.* 673, 675; *S. C. in error*, 6 *Hill*, 174.) V. The judge erred in charging the jury that it appeared that an authority to a broker to sell real estate did not authorize him to enter into a written contract with the purchaser, in the name of his principal; and that an authority to a broker to close a bargain, did not authorize the broker to sign the contract himself. (1.) In sales of merchandise, a broker is ordinarily the agent of both parties. It is his duty to sign the contract, and by his signing he binds each party. In the city of London the broker is sworn to do his duty, and gives a bond, by which he is bound to enter the terms of the contracts which he makes in a book kept by him, and which entry it is his duty to sign. It was held, in England, that the entry in the broker's book was the original contract; and it was not decided that the bought and sold notes delivered by the broker of the parties, were sufficient evidence of the contract, until the case of *Goom* v. *Aflalo*, (6 *B. & C.* 117.) *See Grant* v. *Fletcher*, 5 *B. & C.* 436, 437; *Thornton* v. *Charles*, 9 *M. & W.* 802, 805; *Pitts* v. *Beckett*, 13 *M. & W.* 743, 50.) The courts in this state adopted the same rule. (*Peltier* v. *Collins*, 3 *Wend.* 459, 467. *Bailey* v. *Ogdens*, 3 *John.* 399, 419.) In many cases the broker acts as the agent of one party only, as in this case, and the other party acts for himself. (*Davis* v. *Shields*, 26 *Wend.* 341, 349. *Hargous* v. *Stone*, 1 *Seld.* 73, 91.) (2.) But in regard to contracts for the sale of any lands, or any interest in lands, the *statute* requires the contract, or some note or memorandum thereof, to be in writing, and expressly authorizes the subscription of the name of the party by whom the sale or lease is to be made, to be made by the agent of such party, lawfully authorized. (2 *R. S.* 135, §§ 8, 9.) (3.) It is settled, that a verbal authority is sufficient for that purpose. (*Worral* v. *Munn*, 1 *Selden*, 229, 239–243. *Mc Whorter* v. *McMahan*, 10 *Paige*, 386, 394. *Champlin* v. *Parish*, 11 *Id.* 405, 411.) (4.) The proof given was of an

Coleman *v.* Garrigues.

express authority to the broker, to sell upon the terms agreed upon, and to "close the bargain;" an authority to' sell is sufficient to justify the broker to sign the name of his principal to an agreement to sell, which will bind him ; the further instruction " to close the bargain" is conclusive upon the question of the extent of authority intended to be conferred, because by law " the bargain" could not be " closed" in any other manner by the broker. It would be difficult to select language stronger than this to justify the signing of an agreement binding the principal to convey on the terms he instructed his agent to offer, unless he directed him specifically to put his name to the written contract. A power thus given must be construed as intending to confer all the usual means, and to sanction the usual manner of performing what is intrusted to the agent. Not only these, but all appropriate and reasonable modes may be used by the attorney, and are within the scope of the authority. (2 *Kent's Com.* 618. *Paley on Agency by Lloyd,* 197, 200. *Nelson* v. *Cowing,* 6 *Hill,* 336, 38. *Damon* v. *Granby,* 2 *Pick.* 345, 51, 52. *Le Roy* v. *Beard,* 8 *How. S. C. R.* 451, 68. 5 *Peters' U. S. R.* 347, 359.)

VI. The verdict should be set aside, and a judgment for the plaintiff for specific performance of the contract proved, providing for the satisfaction of the outstanding incumbrances out of the money to be paid by the plaintiff, should be entered, with costs.

*J. S. Sluyter,* for the defendants. I. The plaintiff's exceptions were none of them well taken. The question whether the agent had, upon other sales for Secor, signed his name, was properly allowed, because it tended to *disprove the broker's authority* to sign a contract in Secor's name. The two contracts for the sale of other lots belonging to Secor were properly admitted in evidence, for the same reason. The conversations between Secor ánd the broker were properly admitted, because they related to the broker's authority. The evidence of custom was proper, to show the authority of real estate brokers generally, and what was understood by the language used to the broker in this case. (*Fulton Bank* v. *New-York and Sharon*

*Canal Co.*, 4 *Paige*, 127, 135. 3 *Denio*, 254, 6.) The charge of the judge was entirely correct. He gave only his own impressions upon the evidence, and they were right; but if they had been wrong, that would have afforded no ground for exception. (*Carver* v. *Jackson*, 4 *Peters*, 1. *Jackson* v. *Timmerman*, 12 *Wend.* 301.)

II. The judgment should be affirmed.

*By the Court*, MITCHELL, J.   The action was by Coleman against Secor, to compel the specific performance of an alleged agreement to sell real estate.   Such agreement as was made was made through an agent, R. S. Malloy.   The authority of Malloy to make the contract was denied.   Judgment was for the defendant, and the plaintiff appeals.

Malloy's evidence of his authority was, that the defendant said he must have all cash on the delivery of the deed, and that if the witness could get $3000 cash on delivery of the deed, he might close the bargain.   Without any authority but this, Malloy signed an agreement in the name of Secor, selling the property for $3000 cash on the delivery of the deed.   His whole authority was to make the agreement as far as it is above stated; but he added another clause, making Secor agree to give a warrranty deed with full covenants, and a perfect title, at any time upon demand, within thirty days from the date.   This was a contract to give a warranty deed with full covenants; the authority was only to give a deed which would have been satisfied by covenants against his own acts.   The contract was to give a deed at any time on demand, within 30 days from date, which gave the *purchaser* thirty days, or as much of that time as he pleased to delay the payment; the authority was only to sell for cash on delivery of the deed, which reserved to the *seller* the right to demand cash immediately, or within any reasonable time after the contract was made, on delivery of the deed.   The contract gave the option, as to any period within the thirty days, to the *buyer;* the authority reserved such option, if there were to be any, to the seller.   These were such clear and material departures from the authority, that the bargain made

Coleman *v.* Garrigues.

by the agent did not bind the principal. The plaintiff therefore cannot recover, whether any thing was improperly ruled at the trial or not. The judgment against the defendant must accordingly be affirmed.

There is also another objection to the plaintiff's right to recover. The authority to Malloy was merely "to close the bargain." It is well known that the general agency of brokers in real estate is limited to finding a buyer or borrower who will assent to the terms of the seller or lender, and then bringing the parties together. A lender on mortgage would be astonished to find his broker assuming to sign his name to a contract to loan on real estate; and the borrower would be no less and justly astonished to find that the broker had signed a contract in his name to mortgage his real estate. The owner of real estate who authorizes a broker to sell his land, would be surprised to find the broker assuming to sign a contract for the sale; and the buyer would be no less surprised to find his name fixed by a broker to a contract to buy. In dealing in real estate, the authority to sign the contract is never understood to be granted from a mere authority to make a bargain. The proposed purchaser may be very objectionable; he may be one who would erect nuisances to annoy the neighbors, or who would contract to pay cash and then cause delays, which on slight grounds a court of chancery would excuse, and so make the nominal cash payment a long credit; so, too, the borrower on mortgage may be one with whom the lender would be unwilling to have any dealings. For such reasons the power of the broker is thus practically limited; and he does not exercise, and is not understood to possess, the power to use the name of either of the principals.

A different rule may prevail as to merchandise; then the transaction ends in the sale; there is no reason (as in the case of real estate) why the seller should prefer one purchaser for cash to another. All he wants is the cash, and then it is immaterial to him how the goods are used or employed after they are sold. There, no abstract of title is to be furnished; the buyer has no chance of gaining time by captious objections to title;

he is to pay as soon as the goods are delivered; and if he does not, no court of chancery will interpose to excuse his delay. The contract for the sale of real estate needs the skill of a lawyer: that for the sale of merchandise, any clerk may draw; it is merely "A. B. bought of C. D." and the article and price. After parties have verbally agreed, one to buy and the other to sell real estate, much remains still to be done before there is a "concurrence of their minds," who is to receive the rent in whole or in part, who is to pay the taxes for the current year, in whole or in part. If the house be burned down, is the contract still to be carried out; if so, who is to have the benefit of the insurance; what covenants as to title are to be in the deed; and is the purchaser to enter into covenants against what are called nuisances. These are matters which the law may supply, when the parties do not; but they are matters as to which it is well known the parties are apt to differ after they have agreed on the price; and that circumstance makes it necessary that they be brought together, before a binding bargain be made, unless they directly authorize the agent to sign for them.

An agent within the meaning of the statute of frauds, who can sign the name of the owner of lands to a contract for its sale, is not one who has a mere authority to make a bargain for the sale, but one who is made the owner's agent to *sign* his name to the contract. That agency may be by parol, but it is not included in a mere authority to sell.

The judgment for the defendant is affirmed, with costs.


[NEW-YORK GENERAL TERM, May 1, 1854. *Mitchell, Roosevelt* and *Clerke,* Justices.]