## NEWTON *against* BRONSON, executor.

This court is not authorized to review the determination of the supreme court on a question of fact in an equity suit commenced since the enactment of the Code.

The supreme court may compel the specific performance, by a resident of this state, of a contract for the conveyance of land lying without its jurisdiction. It has the same jurisdiction in this class of cases as that possessed by the former court of chancery.

This jurisdiction is not taken away by the statute (*Code*, § 123), which enacts that actions for the recovery of real estate or an interest therein, or for the determination of a right or interest in real property, must be tried in the county where the land lies.

This provision of the Code is not applicable when the land which is the subject of the action lies out of the state.

Although an executor appointed in this state cannot act as such beyond our jurisdiction, he may convey land situate in another state where the power to do so is contained in the will.

An executor or other trustee empowered to sell lands in his discretion, cannot authorize an agent to contract for their sale. The power is a personal trust which cannot be delegated, and a contract by an agent is void.

But where such a contract has been executed by an agent, the principal may render it valid by ratifying it with full knowledge of the facts. In ratifying it he exercises the personal qualities essential to the due execution of the trust.

Although the statute (2 *R. S.*, 135, §§ 8. 9) requires a contract for the sale of land to be in writing, subscribed by the party or his agent lawfully authorized, it is not necessary that the agent should have written authority.

And where a party, without authority, executes a contract for the sale of lands in the name of the owner, a ratification by the latter, although by parol, makes the contract valid within the statute.

But in a case where the principal could not delegate authority to the agent to make the contract, the ratification must be in writing subscribed by the principal, and in such form as to render the contract valid within the statute as one originally made by him.

It is a sufficient compliance with the statute where the party signs a writing referring to and adopting the instrument containing the terms of the agreement as his contract; it is not indispensable that the latter should be subscribed by him.

THE action was brought in the supreme court against Frederic Bronson, as executor of the will of Arthur Bronson.

deceased, to compel the specific performance of a contract alleged to have been made by him, as such executor, by Ogden & Jones, his attorneys, with one Robert F. Bartlett, for the sale and conveyance to the latter of lands situate in the State of Illinois. The plaintiff derived title to the contract and the rights of Bartlett by assignments. Arthur Bronson died in 1844, in the city of New-York, owning the land in question. By his will he authorized and empowered the executors therein named, or such of them as should qualify and assume its execution, " to contract for the sale of, and to grant, bargain, sell and convey in their discretion, in fee imple or otherwise, at public or private sale, and for such price or prices or other consideration as to them may seem proper, for cash or upon credit," all or any part of the real estate whereof he should die siezed. The will, in express terms, authorized the executors to employ such agents or clerks in managing the estate as they should deem necessary or proper; and named Frederic Bronson and one Griffin, executors. The will was duly proved before the surrogate of the city and county of New-York, and letters testamentary were issued to the defendant, who alone qualified and assumed the office of executor.

The cause was tried before Justice Mason at a special term of the court in Chenango county. It was proved that Ogden & Jones executed the contract sought to be enforced in the name of the defendant, as executor. There was no proof that they were authorized, in writing, by the defendant to do so, or that they had any express authority from him to execute the contract at the time it was made; but there was evidence of declarations and acts by the defendant, as executor, acknowledging the validity of the contract; and letters written by him, as executor, to the plaintiff, acknowledged receipts of payment upon the contract were read in evidence. One of these letters was as follows:

Newton *against* Bronson.

NEW-YORK, *June*, 1850.

WARREN NEWTON, Esq., Norwich:

Dear Sir— I have received your letter of the 13th inst. with a draft for $198.50, which, with $1.50 premium thereon, amounting together to $200, I have credited on account of Robert F. Bartlett's contract, dated 17th January 1845, for part of the S. W. ¼ of sec. 10, in T. 36 N., R. 9 E., in Will county, Illinois.

I cannot give you a statement of the balance now due on this contract until I can get a statement from Ogden & Jones, to whom I have written, as all previous payments on this contract have been made to them. When I receive their accounts I will send you a statement of the amount due on this contract.

Respectfully, your obedient

F. BRONSON, *Exr.*

The foregoing letter describes correctly the contract sought to be enforced. The statute of the State of Illinois relative to contracts for the sale of land was read in evidence on the part of the defendant, and is substantially the same as the statute of this state on the same subject. (2 *R. S.*, 135, §§ 8, 9.) Among the grounds of defence the defendant insists that the purchase price of the land specified in the contract was not fully paid; and this depended upon the question whether a sum of $33.50 paid to Ogden & Jones should have been applied on the contract or was applicable upon an alleged demand to them. Considerable evidence was given upon this point, but it is unnecessary to state it.

The counsel for the defendant insisted at the trial that the complaint should be dismissed upon the following grounds, with others: 1. That the action being for the recovery of real estate situate in Illinois, and for the determination of the alleged right or interest of the plaintiff therein, the court had no jurisdiction of the case; 2. That it was not shown that the alleged contract was executed by the defendant or

his authorized agent; 3. That the contract executed by Ogden & Jones as agents was void, even if they were duly authorized to make it, because the defendant could not delegate authority to contract for the sale of the land, and that no ratification, by the acceptance of money upon it or otherwise, could render it valid; 4. That the plaintiff had not paid the purchase price in full.

The court at special term adjudged that the plaintiff was entitled to a specific performance of the contract by the defendant as executor, and judgment was entered directing him to execute a proper conveyance of the land to the plaintiff. This judgment was affirmed at a general term in the 6th district. The defendant appealed. The cause was submitted on printed points.

*J. Larocque*, for the appellant.

*I. S. Newton*, for the respondent.

DENIO, C. J. This action was commenced subsequent to the enactment of the Code of Procedure, and all the proceedings therein are subject to its provisions. It was tried by the court without a jury. The question principally discussed, in the printed briefs submitted by the counsel, is whether the purchase money mentioned in the contract for the sale of the premises in question was fully paid up by the plaintiff as assignee of the original vendee. Whether it was entirely paid or not depends upon the question whether the sum of $33.50, charged by Messrs. Ogden & Jones for their services respecting the mortgage of Erastus Newton, and deducted from the money paid by Isaac S. Newton to them, was properly retained by those gentlemen, or whether it ought to have been applied on the contract. This depends upon a variety of evidence, written and oral, and was purely a question of fact. There is no statement of facts found; but it is apparent from the judgment, as well as from the

Newton *against* Bronson.

opinion of the judge before whom the case was tried at special term, that this sum was by the court allowed to the plaintiff on account of the moneys payable by his contract. The determination of questions of fact in this class of cases belongs to the supreme court, whose judgment upon such questions we have no authority to review. (*Dunham* v. *Watkins*, 2 *Kern.*, 556; *Griscom* v. *The Mayor, &c., of New-York, id.*, 586.) We shall therefore assume, as the supreme court has adjudged, that the whole purchase price of the land contracted for was paid.

There are, however, certain questions of law, which arise upon the pleadings and the conceded facts, which are properly before us:

1. The contract was for the purchase of lands lying in the State of Illinois, but the parties are residents of this state, and subject generally to the jurisdiction of its courts. The defendant's counsel insists that the court below had no jurisdiction in such a case to decree a specific performance. It is not denied but that such a jurisdiction existed in the court of chancery, nor but that it passed to the supreme court by the provisions of the present constitution. That concession could not be avoided consistently with a settled course of adjudication. (*Massie* v. *Watts*, 6 *Cranch*, 148; *Shattuck* v. *Cassidy*, 3 *Edw. C. R.*, 152; *Ward* v. *Arredondo*, 1 *Hopk. C. R.*, 213; *Mead* v. *Merritt*, 2 *Paige*, 402; *Mitchell* v. *Bunch, id.*, 606; *Sutphen* v. *Fowler*, 9 *id.*, 280.) The cases in the English court of chancery will be found referred to by Chancellor Walworth in the last of these cases. The doctrine thus established is, that this court, having jurisdiction of the person of the defendant, will, by its process of injunction and attachment, compel him to do justice, by the execution of such conveyances and assurances as will affect the title of the property in the jurisdiction within which it is situated. The present supreme court possesses the jurisdiction formerly exercised by the court of chancery. (*Const., art.* 6, § 3; *Laws* 1847, *p.* 325, § 16.)

The reliance of the defendant's counsel is upon § 123 of the Code. That provision relates to "the place of trial in civil actions," and declares that certain actions shall be tried in the county in which the subject of the action or some parts thereof is situated, subject to the power of the court to change the place of trial. Among the actions enumerated are such as are brought "for the recovery of real property or of an estate or interest therein, or for the determination in any form of such right or interest." The latter branch of the statute is vague and indefinite, but the language is comprehensive, and it may perhaps embrace suits for a specific performance of contracts for the sale of lands where they are situated in this state. It has been so held in the superior court of the city of New-York, and I am inclined to assent to the views of that court (*Ring* v. *McCoun*, 3 *Sandf. S. C. Rep.*, 524.) Conceding that it is sufficiently broad to embrace such suits, it clearly has no application to cases where the subject of the action does not lie within any county in this state. The object of the section is to determine the venue in the classes of actions to which it refers, and it does not profess to limit or define the jurisdiction of the court. It is sought to be implied from it that where, in the actions enumerated, the subject of the controversy does not lie in some county in this state, no action whatever will lie. This would be a very violent implication. When the legislature determines to abolish any portion of the jurisdiction of the superior courts of the state, we may expect that it will be done in direct and unequivocal language, referring to that particular subject, and that the provisions will not be found lurking under a remote implication drawn from provisions relating to the place of trial. This objection to the judgment under review is untenable.

2. It is argued that the defendant's office of executor does not extend to the lands in Illinois, upon the principle that letters testamentary and of administration have no force beyond the jurisdiction in which they are granted. (*Shultz*

v. *Pulver*, 11 *Wend.*, 372.) Hence, it is said, the defendant cannot effectually perform the judgment of the supreme court, not being able, as it is insisted, to affect the title to lands out of the state. But the authority of the defendant in respect to real estate is not conferred by the probate court. He is the donee of a power at common law and under the statute; and although it was, by the will, made a condition to his acting under the power that he should qualify as executor, when he has performed that condition, he acts in conveying the land as the devisee of a power created by the owner of the estate, and not under an authority conferred by the surrogate. (*Conklin* v. *Egerton's adm'r.*, 21 *Wend.*, 430, 436.)

3. It is urged by the defendant's counsel that the contract of sale is void for the reason that it was made by an agent of the defendant—according to the maxim, "*Delegatus non potest delegare.*" The rule of law no doubt is, that a power of this kind is a personal trust and confidence, which cannot be committed to another than the grantee or donee of the power. (*Berger* v. *Duff*, 4 *Johns. C. R.*, 369.) Besides this difficulty, the defendant in his answer denies that the agents, who executed in his name the contract which the plaintiff seeks to enforce, had any authority, in fact, from him to execute it, and the plaintiff has failed to show any power of attorney or other express authority from him to them. The last objection is fully overcome by ample and repeated acts of acknowledgment and ratification, by the defendant, of the contract in question, in writing as well as by parol. The evidence upon this point was quite sufficient to enable the court to decide that the agents were authorized by parol to execute the contract, and a parol authority under our statute, and under the statute of Illinois, which is identical in its provisions, would be sufficient. The contract itself must be in writing, but where it is signed by an agent the power to execute it may be by parol. (*Lawrence* v. *Taylor*, 5 *Hill*, 107, 112; *Champlin* v. *Parish*, 11 *Paige*, 405; *McWhorter* v.

*McMahan,* 10 *id.,* 386.) That a subsequent ratification is equally effectual as an original authority is well settled. (*Weed* v. *Carpenter,* 4 *Wend.,* 219; *Story on Agency,* §§ 239, 244, 250, 252 to 256; *Episcopal Soc.* v. *Ep. Ch.,* 1 *Pick.,* 372; *Corning* v. *Southland,* 3 *Hill,* 552, 556; *Moss* v. *Rossie Lead Mining Co.,* 5 *Hill,* 137; *Clark's exr.* v. *Van Riemsdyk,* 9 *Cranch,* 153; *Willinks* v. *Hollingsworth,* 6 *Wheat.,* 241; *Lawrence* v. *Taylor, supra.*) But it may be said that this principle is scarcely broad enough to answer the plaintiff's purpose. If a person ratifies the act of one who has assumed to be his agent, the effect of the transaction, according to the books, is the same as if he had actually given him direct authority in the premises to the extent to which such act reaches. Here the objection is that the defendant could not bind himself in his representative character by any agent, however fully authorized. If, therefore, the acts of ratification which are proved in this case are no more than an equivalent to a power of attorney executed by the defendant before the contract was signed by his agents, the objection that the defendant could not delegate his own delegated authority is not answered. The reason of the maxim, *Delegatus non potest delegare,* however is that, in the cases to which it applies, the first constituent has a right to the personal judgment, care and skill of his agent. Assuming that Ogden & Jones, in this case, acted without authority from the defendant, the latter had a right, when the contract came to his knowledge, either to repudiate or to confirm it. In determining upon one or the other course, he brought into exercise those personal qualifications on account of which he is presumed to have been selected by the testator. The law does not allow him to commit the power with which he is entrusted to another, for perhaps that other would bind the estate to a transaction which the former might not have considered advantageous and safe if he had acted directly upon it. The reason fails where the person actually entrusted with the authority has, with a full knowledge of the facts, ratified the act of one

who has assumed to act as his agent. But if the acts of ratification rested wholly in parol there would still remain a formal difficulty. The plaintiff (aside from the equitable doctrine arising out of a part performance) must show a contract in writing, subscribed by the defendant or his lawful agent. The execution of the contract by Ogden & Jones, in the name of the plaintiff, goes for nothing, not because they had no power to execute, for that is remedied by the ratification, but because the act was one which could not be done by attorney; and though the defendant, with a full knowledge of the terms of the contract, elected to abide by it, that election would not *answer* the exigency of the statute, which requires the contract or some note or memorandum of it to be in writing, and subscribed by the party or his agent *lawfully* authorized. The ratification in such a case must be authenticated in the same manner as though it were an original contract made by the defendant. But the plaintiff is relieved from the embarrassment presented by this view of the case, by the letters of the defendant which were given in evidence. The one dated June, 1850, refers to the contract by its date and the name of the vendee, and it contains a description of the premises intended to be conveyed. The rule is well established in the English courts that where a contract in writing or note exists which binds one party, any subsequent note in writing signed by the other is sufficient to bind him, provided it contains in itself the terms of the contract, or refers to some writing which contains them. (*Sugden on Vendors*, ch. 3, § 3; *Dobell* v. *Hutchinson*, 3 *Adolph. & E.*, 355; *Jackson* v. *Lowe*, 1 *Bing.*, 377.) It is a reasonable rule, and not liable to the objection that it lets in the frauds and perjuries which the statute was intended to guard against. It was never required that the vendor and vendee should sign at the same time or upon the same identical paper. The revisors proposed that the security to be given for the purchase money should be executed at the same time with the agreement to convey, to

avoid what they considered an evil, namely, the doctrine "that a letter or other writing, though written subsequently to the making of the agreement," would take a case out of the statute. (3 *R. S.*, 655, *2d ed.*) The legislature, however, did not adopt this view; but, instead of the section proposed, reënacted the provision in the language of the act of 29 *Charles II.*, *ch.* 3, and of our former act, only changing the word *signed* to *subscribed*, and requiring the consideration to be expressed. (1 *R. S.*, 135, §§ 8, 9.) In this case the agreement was subscribed within the full meaning of the word, for it was written at the bottom of the writing intended to be authenticated. The mischief which it was intended to prevent, by using the word subscribed, was a course of decisions which held that the name of the party written in any part of the agreement, though in a manner not intended to authenticate the paper, was held a sufficient signing (*Clason* v. *Merrit*, 14 *Johns.*, 485; *Davis* v. *Shields*, 26 *Wend.*, 341.) This was not a case of that kind. The signature to which I propose to give effect was a subscription.

I am in favor of affirming the judgment of the supreme court.

T. A. JOHNSON delivered an opinion in favor of reversing the judgment, on the ground that the court below erred in holding that the $33.50 paid Ogden & Jones was applicable on the contract. MITCHELL, J., was also for reversal.

The other judges concurred in the opinion of DENIO, C. J.

Judgment affirmed.