JOHN W. HAYDOCK, Executor of WM. F. BURDEN, Appellant, *v.* FREDERICK A. STOW, Respondent.

A written instrument subscribed by the owner of land, authorizing a real estate broker so sell it upon certain terms therein specifically stated, and an agreement to purchase the property upon those terms subscribed by a purchaser, subsequently written across the face of the paper while unrevoked in the hands of the broker, do not, taken either separately or together, form a contract for the sale of the land binding upon the owner; nor does his subsequent parol assent to the terms of sale give validity to the transaction.

(Argued March 24th, 1869, and decided June 11th, 1869.)

APPEAL from an order of the General Term of the third district, reversing judgment for the plaintiff and ordering a new trial.

The action was brought to compel the specific performance by the defendant of a contract alleged to have been made by him for the conveyance of his farm, situated in the city of Troy and town of North Greenbush, to the plaintiff.

The following facts appeared upon the trial:

The farm in question is owned by the defendant, who, with his wife, had resided on it, at the time of the trial, for twelve years.

On the 18th day of February, A. D. 1864, the defendant, at the office of Peck, Hillman and Parks, brokers, in the city of Troy, signed an instrument in writing, of which the following is a copy, viz:

"I hereby authorize and empower Peck, Hillman & Parks, agents for me, to sell the following described property, viz: [Here follows a description of property.] To be sold within

days from this date, on the following terms, viz: Three hundred dollars per acre, cash on delivery of deed, or $15,000 can remain on bond and mortgage for three or five years, with interest semi-annually, if desired by the purchaser; reserving the right to withdraw the property at any time before sale, by giving Peck, Hillman & Parks notice thereof.

"Troy, February 18, 1864.

"F. A. STOW."

The defendant delivered this power of attorney to Peck, Hillman & Parks, they then being real estate agents and brokers at the city of Troy, with a United States revenue stamp of the denomination of five cents thereto affixed and canceled by the defendant, with the letters and figures "F. A. S., Feb. 20, 1864."

This instrument, thus signed, remained in the hands of Peck, Hillman & Parks down to the time of the trial.

The wife of the defendant was not informed of what her husband had done until after the 9th of March, 1864, and then refused, and has ever since refused to assent to a sale, or sign a deed of the premises, alleging as the reason for such refusal, that it was necessary for her health to retain the farm so that she could reside there.

On the 9th of March, the defendant made a correction in the power of attorney of February 18, but it was not then re-signed or re-stamped.

After this correction, and on the same day, the plaintiff wrote across the face of this instrument, and signed the following, viz:

"I hereby agree to purchase the property herein mentioned upon the terms expressed, Troy, 9th March, 1864;" and left

.the same in the hands of Peck, Hillman & Parks, with a five cent revenue stamp affixed and canceled with the letters and figures " 3, 9, '64, W. F. B." and the same remained in the hands of Peck, Hillman & Parks down to the time of the trial.

No writings between the parties relating to the real estate were signed after this by either of the parties or by any person in behalf of either of the parties, and these two writings are all the written evidence of a sale or contract for a sale of the premises.

The plaintiff introduced evidence to prove that the defendant by parol accepted the two instruments as a contract and ratified and confirmed the same, and made arrangements to perfect the same and paid the brokers.

On the 18th of April, the defendant served on Peck, Hillman & Parks an instrument in writing, signed by him, revoking and declaring null the instrument previously signed by him, and the authority conferred to sell the property.

Afterwards, on a demand made that defendant should convey the farm, he declined to do so on account of his wife's refusal.

The wife of the defendant, at the time of the judgment, was thirty-nine years of age.

On the trial of the cause, the defendant objecting and excepting, the plaintiff affixed to the power of attorney of February 18th, a United States revenue stamp of one dollar, and canceled the same, and the power of attorney thus stamped was given in evidence.

A decree was made directing the defendant to perform only so far as able to do so, and in case the wife refuse to join in the execution of a conveyance, that the same be executed by the defendant alone, subject to the contingent right of dower therein, and that one-third of the purchase money, after deducting the amount secured and unpaid on certain bonds and mortgages, remain on bond and mortgage, payable upon the death of his wife, with annual interest payable to the defendant. From this decree the defendant appealed to the General Term of the Supreme Court.

The General Term of the third district reversed this judgment and ordered a new trial. The plaintiff appeals to this court, and stipulates that, if the order of reversal be affirmed, judgment absolute may be rendered against him.

*William A. Beach*, for the appellant, upon the point that the paper signed by the defendant was not a mere power, but a proposal to sell, complete as an agreement when made operative by acceptance, cited *Vassar* v. *Camp* (11 N. Y., 441); *Mactier* v. *Frith* (6 Wend., 103); *Merritt* v. *Clausen* (12 Johns., 102) *S. C.* (14 id., 484); *Coleman* v. *Carrigues* (18 Barb., 60). He also insisted that, whatever was the nature of the instrument, it was competent for the defendant to adopt and use it as a proposal, and cited *Blossom* v. *Griffin* (13 N. Y., 569) *Pullen* v. *LeRoy* (30 id., 549); *Stockwell* v. *Holmes* (33 id., 53); *Hutchins* v. *Hubbard* (34 id., 24). Upon the point that it was proper to decree partial specific performance with abatement in price for deficiencies in title, he cited Story's Eq. Jur., sec. 779; *Hill* v. *Ressegieu* (17 Barb., 162); *Mors* v. *Elmendorf* (11 Paige, 277); *Davis* v. *Parker* (17 Allen, 94).

*Amasa J. Parker and Charles E. Patterson* for the respondent, cited *Worrall* v. *Munn* (5 N. Y., 229, 246); *Chaplain* v. *Parish* (11 Paige, 406); *Coles* v. *Bowne* (10 id., 526, 537); *Davis* v. *Shields* (26 Wend., 341); *Fire Ins. Co.* v. *Loomis* (11 Paige, 431); *Lafarge* v. *Becket* (5 Wend., 190); *Norton* v. *Woodruff* (2 N. Y., 153); *Coleman* v. *Carrigues* (18 Barb., 60); *Doty* v. *Miller* (43 id., 529); *Moses* v. *Breiling* (31 N. Y., 462). Upon the point that where title is defective and contract made without the consent of the wife, and she refuses to join, the purchaser is left to his action for damages, they cited *Emery* v. *Wase* (8 Vesey, 505); *Howell* v. *George* (1 Madd., 1); *Hall* v. *Young* (4 Am. Law Reg., 412); *In re Hunter* (1 Edw. Ch. R., 6); 2 Story's Eq. Jur., sec. 769; 3 Barb., 50; 24 N. Y., 45).

HUNT, Ch. J.  A determination of the character of the instrument signed by the defendant, dated February 18, 1864, will go far to determine this controversy.  It is conceded that this determination is to be made upon the instrument itself.  It is plain, distinct, free from ambiguity in its terms; and its meaning and character, as a legal question, are to be decided upon the face of the document itself.  It is variously styled an agreement to sell, an offer or proposition of sale, and a power of attorney.

It is not an agreement to sell, for the reason that there are not two parties to it.  An agreement cannot be made by one party alone.  There is no pretence that Peck and Hillman agreed to buy, or that the defendant agreed to sell to them, and they are the only parties named in the paper except the defendant himself.  Nor do I see any ground upon which it can be called an offer of sale, except so far as the appointment of an attorney to sell, may include such offer.  I agree that if the defendant had addressed to Mr. Burden a letter offering to sell him these premises upon the terms specified herein, and Mr. Burden had made a written acceptance of the same, addressed and delivered to the defendant, that a contract of sale would have been thereby created. (*Vassar* v. *Camp*, 11 N. Y., 441.)  But that is not the present state of facts.  I consider the instrument to be a plain, direct, unqualified power of attorney to sell the land mentioned in it; nothing more, nothing less.  I do not discover in it a single expression that embarrasses such a conclusion.  Peck & Co. were real estate brokers in Troy, and kept a book in which the authorities given to them were entered.  Doubtless there were blank forms in use by them in which, with the necessary filling up, the authority was given.  I thus account for the limitation of — days, as well as for the reservation of the right to withdraw at any time before sale, upon giving notice to Peck & Co.  In law, this reservation was unnecessary.  The right belonged to the defendant, and was as perfect without the formal reservation as with it.  The paper begins thus: "I hereby authorize and empower Peck, Hill-

man & Parks, agents for me, to sell the following described property, viz." This is neither an agreement for sale nor an offer to sell to any particular person, or to the world at large. It is simply a vesting in Peck & Co. of a power before existing in the defendant only, to wit, the power of sale. Before that time his farm could only be sold by himself. Now, another as well as himself, may exercise that power. The defendant not only says that he empowers Peck & Co. to sell his farm, but affirmatively and repetitiously says, I give them authority as "agents for me," thus to make sale. A giving of power and authority, in law creates an agency; but the defendant and Peck & Co. were not content with the declaration of law to that effect, but take the pains to allege, that in fact, Peck & Co. are the agents of the defendant to sell his property. They stand then as agents empowered to sell, and not simply as brokers or middlemen, acting for both parties, and whose duty is ordinarily limited to bringing together the parties, upon an agreement, without power to execute the contract itself. (Story on Sales, §§ 85 to 90; *Moses* v. *Bierling*, 31 N. Y., 462; *Barnard* v. *Monnot*, 33 How. Pr. R., 440.)

An agent authorized to sell either real or personal estate may enter into a contract, within the terms of his authority, which will bind his principal. This is of the very essence of the authority given, viz., an authority to sell. That he can bind his principal by a formal contract is the doctrine of the books from the earliest law on the subject. (*Worrall* v. *Munn*, 1 Seld., 229, and the numerous cases cited; *McWhorter* v. *Baldwin*, 10 Paige, 386; *Champlin* v. *Parrish*, 11 Paige, 411; Story on Agency, §§ 58, 60.) The case of *Coleman* v. *Carrigues* (18 Barb., 60), to the contrary was not well decided.

The document next contains a limitation of time of the authority to sell, the days in which are left blank. I have given the explanation of this. It then fixes the price at which a sale may be made, to wit, $300 per acre. This is a minimum, not a maximum, price. Suppose

that, on the ninth of March, Mr. Burden had come into the
office of Peck & Co., accompanied by Mr. Beach, now his
counsel, and Mr. Burden had said I will buy that property
upon the terms stated in your power to sell, to wit, $300 per
acre, and Mr. Beach had said I also wish to buy the property,
and I will give you $400 per acre for it, and, in other respects,
will comply with the defendant's requirements. Here was
an agent to sell; a person standing in the place of and
representing the vendor, bound to discard every feeling of
friendship, to know no self-interest, to act as he judged the
interests of the vendor would induce the vendor to act, if
present in person, instead of being present by an agent. It
would have been his evident duty to have accepted the larger
offer, to have benefited his client, and not Mr. Burden.
(Story on Agency, §§ 210, 211, 183, 217; *Moore* v. *Moore*,
1 Seld., 256, affirming 4 Sand., Ch., 37; *Tarry* v. *Bank of
Orleans*, 9 Paige, 649, affirmed 7 Hill, 260.)

Assuming that the firm of Peck & Hillman were the
agents and attorneys of the defendant to make a sale for him
of his real estate, the next question occurs upon the transac-
tion of March 9th, 1864. The power of attorney being still
in force, Mr. Burden, on that day, with the concurrence of
Peck & Co., wrote across the face of the instrument these
words: "I hereby agree to purchase the property herein
mentioned upon the terms expressed, Troy, 9th March, 1864,"
and signed the same. The written power of attorney and
the writing signed by Mr. Burden are all the written evi-
dence of a sale or a contract for a sale of the premises. Upon
now being called upon by Mr. Burden to perform the con-
tract of sale, as he alleges it to exist, the defendant interposes
the defence of the statute of frauds. The statute upon that
subject is in these words:

"Section 8. Every contract for the leasing for a longer
period than one year or for the sale of any lands, or
any interest in lands, shall be void, unless the contract
or some note or memorandum thereof expressing the con-

sideration be in writing, and be subscribed by the party by whom the lease or sale is to be made."

"Section 9. Every instrument required to be subscribed by any party, under the last preceding section, may be subscribed by the agent of such party lawfully authorized." (2 R. S., 135; 139, Stat. at Large.)

Peck & Co. had full authority to subscribe the name of the defendant as a party agreeing to sell the premises in question; and if they had made such a contract with Mr. Burden, the defendant would have been bound by it. No such agreement or subscription was made. Mr. Burden has, indeed, expressed in writing his readiness to purchase upon the terms that Peck & Co. were authorized to accept, but Peck & Co. have put nothing in writing. This is not a compliance with the statute, which requires the writing "to be subscribed by the party by whom the sale was made, or by the agent of such party lawfully authorized." The defendant or his agent must sign, to make a compliance with the statute, and no aid is derived from the signature of Burden. This statute has been the subject of repeated adjudications, and its language stands unimpaired. There must be a subscription to the contract by the party selling or his agent. It is not sufficient that there be a subscription by the vendee only. (*Worrall* v. *Munn*, 1 Seld., 229; *Davis* v. *Shields*, 26 Wend., 341; *Nat. Fire Ins. Co.* v. *Lewis*, 11 Paige, 433; *Champlin* v. *Parrish*, 11 Paige, 406.)

It is insisted that the agreement of sale was ratified by the defendant, in his conversations with Mr. Burden, after the 9th of March, 1864. It is proved that upon being informed of the transaction by Peck & Co., he said that it was all right, and that in conversation with Mr. Burden he expressed his satisfaction with the sale, and promised performance. There was sufficient evidence, I doubt not, independent of the question arising upon the statute of frauds, to have justified the judge in finding a ratification of the sale by the defendant. What a party may do, he may ratify, when done without authority, by another in his behalf. What he cannot himself

do, he cannot ratify when done in his behalf. An express and distinct agreement by the defendant, unless in writing and subscribed by himself or his agent will not bind him, nor will it aid in the least that he should subsequently ratify it in the same manner. (*Newton* v. *Bronson*, 13 N. Y., 594.) Yet it is argued that such an agreement, when made by an agent, may be ratified by unwritten words simply. This is not so. The contract has no validity unless it is signed by the party owning the land, or his agent. An oral agreement does not bind him to convey. It matters not when he makes the oral agreement, or where he makes it, or how frequently he repeats it, whether he thus agrees originally, or whether he agrees in confirmation of another. The one indispensable requisite, is that the agreement should be in writing and signed by himself or his agent. All else, however great its quantity, or however numerous its repetitions, is unavailing. In my opinion there is no binding ratification proved that can affect the case.

The question that I have discussed is the main question in the case, and involves the merits more particularly than the others that are presented. I prefer to base my judgment upon it. If I am right, it presents an insuperable obstacle to the plaintiff's right of recovery.

The order for a new trial should be affirmed and judgment absolute ordered for defendant.

JAMES, J., also read an opinion for affirmance upon substantially the same grounds.

All the judges concurring.

Order affirmed, and judgment final for defendant.