MORRIS vs. RUDDY.

1. A broker employed to sell lands has no implied authority to sign a contract of sale on behalf of his principal.

2. But if he had such authority, if the contract varies from his instructions the principal will not be bound by it.

This cause was argued upon bill, answer, and proofs.

*Mr. J. F. Randolph*, for complainant.

It was decided in the case of *Moses* v. *Bierling*, 31 *New York R.* 462, that the real estate broker was legally entitled to his commissions when employed to sell, and he does so accordingly; but we have nothing to do with that in this case.

The memorandum or agreement comes within the statute of frauds. *Brown on Stat. of Frauds*, § 347; *Evans* v. *Prothero*, 13 *English L. and E. R.* 163.

As to the power of the agent or broker. *Brown on Stat. of Frauds*, § 369; 26 *Wend.* 341.

Agents for signing may be appointed by parol. *Brown on Stat. of Frauds*, § 370 A, note (2); *Fry on Spec. Perf.*, § 354.

Agent may sign his own name, and parol proof of his agency is sufficient. *Brown on Stat. of Frauds*, § 370 B; *Fry on Spec. Perf.*, § 354; *Wilson, assignee*, v. *Hart*, 7 *Taunt.* 295.

A subscription by agent of party to be charged, is sufficient under the statute of frauds, though the name or existence of a principal does not appear in the instrument. *Dykers* v. *Townsend*, 24 *New York R.* 57.

He also cited 2 *Parsons on Con.* 290, and note *K*; *Dart on Vendors* 106; *Coles* v. *Trecothick*, 9 *Vesey* 234; *Dart* 84, and note 1.

*Mr. Ludlow*, for defendant.

THE CHANCELLOR.

The bill in this case is for the specific performance of an agreement to sell lands. The agreement is in writing; the property, and price, and other terms of the contract, are specified with sufficient certainty. The contract is not signed by the defendant, but by real estate brokers, employed by him to sell the property. The first objection by the defendant is, that such brokers have not authority to sign a contract, but only to offer the property, and find a purchaser; the second is, that the contract signed varies from the terms authorized.

Brokers are persons employed to effect sales, their general business is only to bring together parties; but with regard to merchandise, it is held that they have the power to bind the principal by their signature to written memorandums of sale, known as bought and sold notes, in sales within the statute of frauds. But this power was for a long time doubted by the courts, in sales of personal property, and has never been held to exist in sales of land. For sales of merchandise, the broker, as such, has no power to receive the price or any part of it, but his authority is limited to making the bargain.

There is not the same reason, or the same necessity, for holding that the broker is authorized to sign a contract of sale in case of lands, as for merchandise. The sales of *goods* are simple transactions. The sale of real estate cannot be effected without a conveyance by the owner himself, and seldom without an examination of title, and necessarily requires time to complete it.

In this case, the defendant told the brokers, whom he knew to be real estate brokers, that if they could sell this property they should do so, and said he wanted $3000 for it. They agreed, in writing with the complainant, to sell it for $3000. Nothing was said by the defendant about their signing a contract. No other directions were given than those above stated.

In New York, it is held that the authority of a real estate broker, when authorized to sell, lands, only extends to find-ing a purchaser willing to give the price fixed; that when he has done this, he has discharged all his duty, and is en-titled to his compensation, and that he cannot bind his prin-cipal by signing a contract. *Coleman* v. *Garrigues*, 18 *Barb.* 60; *Glentworth* v. *Luther*, 21 *Barb.* 145; *Roach* v. *Coe*, 1 *E. D. Smith* 175.

And the same general view seems to have been taken by the Judges of the Supreme Court of this state, in *Shepherd* v. *Hedden*, 5 *Dutcher* 334. Justice Brown expressly says that the broker has no authority to sign a contract of sale.

I am inclined to adopt this as the correct view, and to hold that this contract is not signed by a person thereunto law-fully authorized, as required by the statute of frauds. Giv-ing authority to sell does not, by force of the terms, or by their general acceptation, give authority to sign the vendor's name to a contract. And in case of lands, it is not wise to extend this meaning by construction.

The contract is alleged to vary from the authority in this: that by the contract, the defendant who employed the broker is left to pay the commissions, while the instructions were to sell for $3000 net, or free from charge for commissions. The defendant testifies that these were the instructions; Camp-bell, the broker, who is the only other witness to the instruc-tions, admits, in his cross-examination, that before the sale he was so instructed by the defendant. He says that the complainant, by a verbal agreement, was to pay the commis-sions; and the complainant offers to pay them. But the written bargain is for $3000, not for that and commissions. If the defendant is bound by the bargain as written, he can no more claim commissions than he could claim $3030, on a parol understanding. If authority should be given in writing, to contract to sell lands for $1000, retaining the right to oc-cupy for three months, a written contract to sell for $1000 would not be valid, although there was a verbal understand-ing which the purchaser will comply with, permitting the

occupation. The defendant is bound by this written contract, to a different bargain from the one he authorized.

On both grounds, the specific performance must be refused.