Tompkins, J.
This is an action for the specific performance of an alleged contract for the sale of real property by the defendant to the plaintiff.
The writing or memorandum alleged by the plaintiff to be a contract, and upon which he relies in this action, reads as follows:
‘ ‘ Nyack, N. Y., August 14th, 1919.
‘ ‘ Mr. Harry C. Lee :
“ Received from the above named Harry C. Lee the sum of thirty-five hundred ($3500) dollars representing a ten (10%) deposit on thirty-five thousand ($35,000) dollars which is the purchase price of the Rev. J. E. Lloyd property on the river front on the East side of Piermont Avenue in South Nyack, N. Y., it being the same premises now owned and occupied by the said Mr. Lloyd and his wife and bounded on the north by property now or formerly of Osborn, on the south by properties on Voorhis Point, on the east by the Hudson River and on the west by Piermont Ave.
“ Title to be closed on November first, 1919.
“ (Signed) H. J. McGinley, Agent
“ for Rev. J. E. Lloyd.”
Two questions of law are presented, namely:
First. Had H. J. McGinley, who signed the contract “ H. J. McGinley, Agent for J. E. Lloyd,” authority to bind the plaintiff to the defendant by a contract to sell and convey the defendant’s real estate?
Second. If McGrinley had such authority, is the memorandum or writing which was signed by him *407 and above ^quoted a valid and enforcible contract for' the sale of the defendant’s real estate? There is also a vital question of fact involved, and that is whether on the 13th day of August, 1919, it was agreed and understood between the parties that further negotiatibns between the plaintiff and the defendant for the sale and purchase of the premises should be suspended until their return from Europe, which would be in the fall of that year.
The greater weight of proof including the circumstances and the probabilities shows that on August thirteenth when the plaintiff and the defendant were both about to sail for Europe, after there had been considerable negotiation between the parties, including Mrs. Lee and Mr. McGrinley, but before the selling price and details of the transaction had been agreed to, it was agreed that nothing more would be done until after the return of the plaintiff and the defendant from their European trips. The defendant and his wife so testified and the testimony of the plaintiff and Mrs. Lee tends to corroborate the defendant’s claim in that respect.
On August thirteenth, Mrs. Lee saw the defendant and had several conversations with him during the day and evening before Mr. Lee arrived, and upon his arrival she informed him that the matter was going to be put over until the defendant came back from Europe. Mr. McGrinley, the agent, testified that when he saw Mr. Lee that evening, he asked him what he had decided to do about the property and that Mr. Lee replied, “ Well I don’t know. As I understand it, Mrs. Lee said the matter was going to be put over until I come back from Europe,” and Mr. McGrinley further testified in substance that when he left Mr. and Mrs. Lee he understood that the agreement with the defendant was that the whole *408 matter was to be suspended until the parties returned from Europe. Mrs. Lee testified that when she left the defendant that evening she told him she wanted the place very badly and asked if it would be just the same when Mr. Lee came back, and that Dr. Lloyd replied in the affirmative. She also testified in substance that the defendant said he thought it would be better if the matter could be suspended until his return from Europe and that “the whole matter would stand over until he got back.” It is conceded that the defendant refused to take a payment on account on August thirteenth. The plaintiff also testified in effect that he understood from the defendant that it had been arranged to let the matter rest for the time being and until he returned from Europe, and that he had talked it over with Mr. McGrinley, the agent, and with Mrs. Lee, and that they were all going to let the matter stand over until he and Lloyd returned from abroad.
The defendant testified that he said to Mrs. Lee before the plaintiff’s arrival, “Now this matter will have to stand just as it is until I get back from Europe,” and that this was said in the presence of Mr. McGrinley and Mrs. Lee and was mandatory to McGrinley, whereupon the agent, McGrinley, said: “ Then if that is the case, you ought to pay some money down,” to which the defendant replied: “ There is no occasion for any money because the price has not been met, but you need not worry, for if we sell at all, we will sell to you.” The defendant also testified that after he had had this conversation with Mrs. Lee and Mr. McGrinley and upon the arrival of Mr. Lee that Mr. Lee said “'Couldn’t this thing stand over until we get back,” to which the defendant replied, “ Nothing else can be done as it was all settled in the presence of Mr. McGrinley and Mrs. Lee,” *409 by which he had reference to the conversation already had that day with Mrs. Lee in the presence of Mr. McGrinley.
Mrs. Lloyd, the defendant’s wife, testified that she heard Mrs. Lee say to the defendant that she had come up from Mr. Lee to ask if Mr. Lloyd would not be willing to defer the transaction until they both returned from Europe, whereupon Mr. Lloyd replied: “ Well my dear woman, nothing else can be done. The time is too short,” and this conversation Mrs. Lloyd says was in the presence of Mr. McGrinley.
The circumstance that both parties were about to sail for Europe and that the plaintiff had not yet agreed to pay the defendant’s price of $35,000, and that there were details to be settled respecting the making of the contract and the date of possession and the time and manner of payment, together with the correspondence between the parties, all tend to corroborate the defendant’s claim that when the defendant saw Mr. and Mrs. Lee for the last time on August thirteenth there had not only been no meeting of the minds upon all the essential elements of a contract of sale and purchase, but, on the contrary, a distinct understanding that the whole matter was to be deferred until the parties should return a - few months later from.Europe. It appeared without dispute that after Mr. and Mrs. Lee had both left the defendant’s home on the night of August thirteenth, and without again seeing Mm, the agent, Mr. McGrinley, importuned the plaintiff to.accede to the defendant’s terms and urged him to purchase the property for the sum of $35,000, and the next day Mr. McGrinley, without again seeing the defendant, went to New York and saw the plaintiff, at which time the plaintiff agreed to the terms and paid to McGrinley the sum of $3,500, being ten per cent of the purchase price; *410 whereupon McGinley wrote, signed and delivered to the plaintiff the memorandum or agreement dated August 14, 1919, and above quoted. In these circumstances it must be held that there was no agreement to sell on the part of the defendant and no authority given by him to McGinley to sell to the plaintiff on the fourteenth day of August. On the contrary, it had been agreed between all the parties that further negotiations should be deferred until the return of the parties from their contemplated European trip, and that after such understanding was had at the defendant’s home on the thirteenth of August, no •other or new agreement was made by them or authorized by the defendant to be made for him by the agent, Mr. McGinley.
If the whole matter was by agreement between the parties put off until the return of the plaintiff and defendant from Europe, then surely the agent, McGinley, had no power thereafter and without authority from the defendant to bind him by another agreement for the immediate sale of the premises. Besides this, I think that even in the absence of an understanding between the parties that further arrangements were to be deferred until the return of the plaintiff and defendant, the agent, Mr. McGinley did not have authority to bind the defendant by executing a contract of sale.
Mr. McGinley was a real estate broker and had the defendant’s premises on his books for sale and, as is the custom in the real estate brokerage business, he took the plaintiff to Mr. Lloyd as a possible purchaser of the premises and his function was to introduce and bring the parties together, and if possible to induce the plaintiff to purchase the premises and to get them to agree upon terms of sale, and when he found for the defendant’s premises a purchaser *411 who was able, willing and ready to purchase the same on the defendant’s terms, he earned his commission as a broker, but I think that he had no power, without express authority from the defendant, to bind the defendant to the plaintiff by a contract of sale. He was not an agent empowered to sell, but simply a broker or middleman whose duty is ordinarily limited to bringing together the parties, but without power to execute a contract on behalf of the owner.
It was so held in Coleman v. Garrigues, 18 Barb. 60, in which the court held:
“ It is well known that the general agency of brokers in real estate is limited to finding a buyer or borrower who will assent to the terms of the seller or lender, and then bringing the parties together. * * * The owner of real estate who authorizes a broker to sell his land, would be surprised to find the broker assuming to sign a contract for the sale. * * * In dealing in real estate, authority to sign a contract is never understood to be granted from a mere authority to make a bargain. The proposed purchaser may be very objectionable; he may be one who would erect nuisances to annoy the neighbors, etc. For such reasons the power of the broker is thus practically limited.
“A different rule may prevail as to merchandise; then, the transaction ends in the sale. * * * The contract for the sale of real estate needs the skill of a lawyer; that for the sale of merchandise any clerk may draw.
“An agent, within the meaning of the statute of frauds, who can sign the name of the owner of the lands to a contract for its sale, is not one who has a mere authority to make a bargain for the sale, but one who is made the owner’s agent to sign his name to the contract.”
*412 This decision was not in my opinion overruled in the case of Haydock v. Stow, 40 N. Y. 368, as claimed by the plaintiff’s counsel. In that case, the court in using the language quoted in the plaintiff’s brief was speaking of express written authority that had been signed by the owner, giving to his agents power to sell certain premises therein described upon terms and conditions, the details of which were all fully set forth in the written authority and amounted to a power of attorney; and the court correctly held that “An agent authorized to sell either real or personal estate may enter into a contract, within the terms of his authority, which will bind his principal.”
But the question here is whether Mr. McGinley acted ' ‘ within the terms of his authority ’ ’ when he undertook to bind the defendant with a written contract, signed by himself as agent.
The case of Coleman v. Garrigues, 18 Barb. 60, has never been, so far as I can find, overruled or disapproved, and the rule there laid down is in harmony with the generally accepted and reasonable rule, that a real estate broker in order to bind the owner of property by a contract of sale must have express authority so to do, and that such power will not be inferred from the fact that the agent or broker has the property on his books for sale. If a real estate broker has implied authority to make a contract of sale on behalf of the owner of property, which he may have on his books for sale and for which he may seek a purchaser, would he not have power also to execute a deed of the premises on behalf of the owner? The powers granted to a real estate broker do not, as a rule, include the power to make a complete sale of his employer’s property, although of course this power may be delegated to him if the employer sees fit to do so. But, it is not within the *413 scope of the ordinary powers of a real estate broker to make a contract of sale which shall be binding upon the owner.
There is another serious barrier to the plaintiff’s right of action, and that is a lack of mutuality of obligation and remedy under the paper of August 14, 1919, alleged to be a memorandum or contract of sale. Assuming that McGinley had authority by the writing in question to bind the defendant as the owner of the premises, there is no obligation on the plaintiff’s part created thereby. He did not sign the paper or any writing excepting its terms. The paper is not an agreement to sell for the reason that there are not two parties to it. An agreement cannot be made by one party alone. The paper in question is no more than a receipt for a deposit on account of the purchase money, but it in no way binds the plaintiff. He does not thereby agree to purchase the property for the sum of $35,000 or any amount. His failure to purchase the property and pay the balance of the purchase money would result in a forfeiture by him of his deposit and nothing more. A paper, and what would have been a binding contract upon both parties, was afterward offered the defendant, but he refused to execute it. A contract for the sale of real estate to be good in equity must be enforcible against all parties to it, and the infirmity of this so-called contract or memorandum is that under it no cause of action in equity could be maintained against the plaintiff for its enforcement and therefore it cannot be enforced against the defendant, even assuming the defendant’s duly authorized agent executed it.
In the case of Dunlop v. Haerter, 181 N. Y. Supp. 491, recently decided by this court in this county, a sufficient contract of sale was executed by both parties and a substantial payment made on account, but it con *414 tained a provision that ‘‘ The party of the second part (the purchaser) shall have the option by forfeiting the payment made on signing this contract, to cancel and terminate this contract at any time on or before January 1, 1914, in which case the party of the first part shall retain the same the said sum of $200.” The party of the second part (the purchaser) brought an action for specific- performance against the owner, and it was held that the contract was void and not enforcible because it lacked mutuality of remedy, inasmuch as under the clause just quoted the owner could not have maintained an action against the purchaser for specific performance, and that decision was affirmed by the Appellate Division without opinion or upon the opinion of the trial court.
In Wadick v. Mace, 191 N. Y. 1, it was held, as it has been many times before, that specific performance of a contract for the sale of land will be denied by a court of equity in the absence of mutuality of remedy by both parties to the contract, and that an offer or tender to perform, such as it is claimed was made by the plaintiff in this case, is not sufficient to relieve the situation of the lack of the requisite mutuality as to remedy. 'The test is whether under the contract or memorandum under which it is sought by the plaintiff to enforce the contract against the defendant, the plaintiff could himself have been compelled by a court of equity to perform. I think it must be conceded that in this case a court of equity could not compel the plaintiff to take and pay for the property.
It follows for the reasons here given, that the complaint must be dismissed upon the merits, with costs.
Complaint dismissed, with costs.