PARDON BRIGGS *v.* JAMES R. SMITH, JR. AND OTHERS.

A clause in a copartnership agreement, by which the firm agreed to employ the plaintiff in a special capacity for five years, but in which the plaintiff was not named as a party, and which was not executed by him, *Held*, void as to the plaintiff, under the statute of frauds, and for want of mutuality.

Plaintiff sued to recover for services rendered at an agreed rate of compensation. Defendant settled the suit by paying a sum not stated. In a subsequent action to recover for services alleged to have been performed, under the same contract, *Held*, that it not appearing for what sum the settlement in the former action was made, the proceedings in that action were not evidence in the second action on the question of the rate of compensation agreed on between the parties.

*It seems*, that the active member of a firm, who manages the whole business, is entitled to dismiss any employee, who is not engaged under a valid agreement for a definite period; and if the latter persists in remaining, under the countenance and support of the dormant partners, he cannot maintain any action against the members of the firm jointly, and is limited to such remedy as he may have against those by whose request and authority he continues to render any service.

APPEAL from a judgment of the Marine Court.

The complaint in the action alleged that the defendants, James R. Smith, Jr., William J. Gordon, George A. Fellows, Solomon D. McMillan, and Martin R. Cook, were, at the times thereinafter mentioned, partners in the storage business, under the firm name of James R. Smith, Jr.

That such copartnership was entered into in accordance with an agreement in writing made between the defendants, dated April 29th, 1867, and to continue until May 1st, 1872.

That by said agreement it was provided that the plaintiff should be employed as superintendent and storekeeper in their business during the said term—to wit: from May 1st, 1867, until May 1st, 1872, at a salary of four dollars per day, Sundays included.

That plaintiff consented to the said agreement, and in accordance therewith, about May 1st, 1867, entered into the employment of defendants, as such superintendent and storekeeper, and duly discharged all the duties thereof until about March 24th, 1870, and had ever since been, and still was, ready and willing, and had from day to day duly offered to perform all the conditions of the said agreement and the duties of the said employment upon his part. That about March 24th, 1870, the defendant, Smith (who had the active charge and management of defendants' business), had refused, and still refused, to allow him to do so or to pay him therefor, from and after January 1st, 1870.

Judgment was demanded for the value of plaintiff's services from January 1st, 1870, to May 1st, 1870.

The defendant, Smith, the only one of the defendants served with process, put in an answer in which he denied that the partnership agreement, referred to in the complaint, had ever been executed on the part of the defendants, Gordon and McMillan, and denied that said agreement was ever legally executed. He admitted that plaintiff entered into the employment of himself and defendant Fellows, and continued so till August 8th, 1868, when he discharged him, and had never since employed him.

On the trial, which was before a judge without a jury, it

appeared that, on April 29th, 1867, the defendant, Smith, was the lessee, for five years, from May 1st, of No. 15 State street, New York, and the other defendants were engaged in the wholesale grocery and commission business, in the city of New York, under the firm name of Gordon, Fellows & McMillan. On that day (April 29th, 1867), the defendant Fellows, with the knowledge and consent of the defendant Cook, but without the knowledge or consent of the defendants Gordon and Mc-Millan, entered into an agreement with the defendant Smith (in which he assumed to act for the firm of Gordon, Fellows & McMillan, and signed the firm name), which set forth that Smith and Gordon, Fellows and McMillan became partners in the storage business, at No. 15 State street, for five years from May 1st, 1867. The agreement also contained a clause providing that the plaintiff should be employed as superintendent and storekeeper, at four dollars per day, Sundays included.

Plaintiff was employed as superintendent and storekeeper, at 15 State street, until August, 1868, when he was formally discharged by Smith, but refused to go.

He continued to remain and perform services, and subsequently sued all the defendants in this action to recover for his services from August, 1869, to January 1st, 1870. In that suit he claimed to have been employed at the agreed price of four dollars per day. That suit was settled by Smith giving his check for the claim, less a few dollars.

After January 1st, 1870, plaintiff continued to go to the store at 15 Front street, and to perform services, although against the wishes of the defendant Smith, and in the interest solely of defendants Fellows and Cook. On February 2d, 1870, however, Smith refused to allow him to be at the store, and locked up and retained the keys of the office which plaintiff had been accustomed to occupy.

On these facts, plaintiff had judgment against defendants Smith, Fellows & Cook, for his services from January 1st, 1870, to February 3d, 1870, at the rate of four dollars per day, the judge admitting as evidence of an agreed rate of compensation the proceedings in the former suit, which had been settled, and in which four dollars per day was claimed as the agreed rate.

The judgment was affirmed by the Marine Court at general term, and defendant Smith appealed to this court.

*James Crombie*, for appellant.

*J. F. Harrison*, for respondent.

By the Court.[*]—Daly, Ch. J.—The copartnership agreement, though *ultra vires* as respects the firm of Gordon, Fellows & McMillan, was admissible, as tending, in connection with the other evidence, to show the existence of a partnership in the storage business between Smith, Fellows & Cook. The discharge of the plaintiff by Smith, in August, 1868, was subsequently waived by allowing him to continue his services, and by paying him down to January, 1870.

The agreement to employ the plaintiff for five years, whether founded upon the copartnership instrument, or the verbal engagement of Smith, Fellows & Cook was equally void (*Drummond* v. *Burrell*, 13 Wend. 308). The plaintiff was no party to the instrument, and therefore, as the judge then decided, there was a want of mutuality (*Haydock* v. *Stow*, 40 N. Y. Rep. 367); and the verbal agreement was void by statute, not being in writing.

But for services actually rendered he was entitled to recover their value (*Shute* v. *Dorr*, 5 Wend. 206; Browne on Statute of Frauds, p. 118); and as the plaintiff had been paid by the defendant for his services up to January, 1870, and was not formally discharged until February 2d, 1870, he was entitled to recover what his services were worth during this period. He himself testified that they were worth $4 a day, and that he had been paid at that rate up to January, 1870; but he had been paid by the settlement of a suit which he had brought, founded upon an alleged agreement made upon the 29th of April, 1867, to employ him as superintendent and storekeeper at a salary of $4 per day, which agreement, the defendant in this action, by the answer which he put in, in that, averred to have been

put an end to by the discharge, on the part of the defendant, of the plaintiff, on the 8th of August, 1868, and that the defendant thereafter had been paid by the other defendants in that action. It was shown that that action was settled by the payment of the plaintiff's claim within a few dollars by the defendant's check; but that was not conclusive as respects the value of the plaintiff's services thereafter. It was a fact tending to show the value of his services, but was not evidence, as the judge below held, of an agreed rate of compensation, and did not preclude the defendant from showing that the services rendered therefor were not the same, or were not as valuable; for the express verbal agreement was void by statute, and, so far as the defendant was concerned, was put an end to by a formal discharge of the plaintiff on his part in writing. He may have continued thereafter performing exactly the same services, and, if he did, it would afford a foundation for an implied agreement on the part of the defendant, that his services should be continued at the same rate of compensation. But this was disputed upon the trial, and by no means appeared, even upon the plaintiff's own showing; for so far from acting thereafter as superintendent of the business, he acted, by his own admission, under the orders of a barkeeper·whom the defendant had employed, and who was paid by the defendant individually, and not by the partners jointly. The defendant was asked if the plaintiff's services were not exactly the same after August 8th, 1868, when the defendant discharged him, as they were before, and his answer was " No. I don't know that it was. I had no confidence in him and *no communication with him respecting the business*;" and it was shown that the defendant was the active partner who attended to the business. The defendant further testified that when he discharged him on the 8th of August, 1868, he told him that if Gordon, Fellows & McMillan chose to keep him they might pay him to attend to their business, but he would not employ him or pay him, and it appeared by the testimony of one of the members of the firm, Cook, that he continued in some such relation. That firm, independent of the interest which two of its members, Cook and Fellows, had in the storehouse business, were in the habit of storing their

goods there, the same as strangers, for which they had the defendant's personal receipts, and Cook testified, "We (in which he may be presumed to have referred to himself and Fellows) wanted to know the state of things; whether the business was paying; and we asked him (the plaintiff) frequently, how much goods they had there, and how much they were paying." That they asked him to see to their whiskey there, and keep a little lookout to see how things were going on in regard to their own goods and other goods in the store, and "whether, in his judg ment, the business was paying," and various things, " and gave him directions to keep them advised of it;" and from his own testimony and that of the defendant and the barkeeper, he appears to have done little if anything, but this; for the defendant, who, as I have said, was the active partner who attended to the business, Fellows and Cook being dormant members, testified that after the 8th of August, 1868, he gave his instructions to the barkeeper : and the plaintiff testified that he generally got his orders from the barkeeper, and the barkeeper continued to give him orders, although upon his cross-examination he was unable to specify any particular instance, and the barkeeper swore that he was not aware of having given the plaintiff instructions or authority to do anything; but on the contrary that he told him on a certain occasion not to roll barrels to a particular place; that the defendant did not want them there, and that the plaintiff replied, "How are you going to prevent me?" All of this, which is uncontradicted, shows that he was then in the interest of Cook and Fellows, acting wholly independent of the defendant, and contrary to his wishes, and so the defendant describes him who swears, "He was sent there by Mr. Cook merely as a spy, to see what was going on in the store."

The whole of the testimony shows that he was there, after the 8th of August, 1868, without the defendant's consent, but with the approbation of the two dormant partners, to watch over their interest, and to keep them advised of what was going on. That the defendant acquiesced in his remaining, after he had given him a written notice of his discharge; and that he settled the suit brought to recover for his services up to January,

1870, was not conclusive upon him, as he may very well have thought, there being two other partners, that it was not in his power alone to get rid of him. The plaintiff was, undoubtedly, of that opinion; and when the defendant again dismissed him, on the 2d of February, 1870, he took no heed of it, but continued there until the 9th of May, when he brought this suit to recover for his services up to that day; and learned, by the decision of the court below, that the defendant could and did put an end to his further service, by formally dismissing him on the 2d of February, 1870 (Collyer on Partnership, §§ 388–389). Indeed, the only fact recognizing the plaintiff's right to recover anything as respects the defendant, after the dismissal in 1868, was the payment by the defendant of the amount by which the suit for the plaintiff's claim to January, 1870, was settled. But it did not appear what that amount was. The testimony of the attorney is, that it was a few dollars less than the plaintiff's claim, which was at the rate of $4 a day. Not being specified, it was indefinite, and not evidence, as the court below held it to be, of the agreed and exact rate of compensation thereafter. It was simply general evidence upon the question of the value of the plaintiff's service, but did not preclude the defendant from giving evidence upon that point. The agreement prior to August 8th, 1868, was not an exact guide, for the services afterwards were not the same. Any evidence, therefore, showing, or tending to show, both what the plaintiff's services were from December 31st, 1869, to the 2d of February, 1870, and what they were reasonably worth, was admissible.

The defendant's barkeeper was asked, "Were his services worth anything since the 1st of January, and if so, what?" This question was objected to, and the justice excluded it, not for any objection to the form of it, but because "there was evidence of an agreed rate of compensation." It was a proper question. The witness had shown, by his previous examination, that he was well informed of the nature of the services which the plaintiff had rendered in the general conduct of the business, and from his position was enabled to judge of their value, or, at least, no objection was taken to his competency in this respect, or that a proper foundation had not been laid.

For this error the judgment should be reversed, and I feel relieved that we can dispose of the appeal upon this ground, as I by no means feel certain that the plaintiff was entitled, under the circumstances, to maintain an action against the defendant. The active member of a firm, who manages the whole business, is entitled to dismiss any employee who is not engaged under a valid agreement for a definite period ; and if he persists in remaining, under the countenance and support of the dormant partners, I doubt if he can maintain any action against the members of the firm jointly, and if he is not limited to such remedy as he may have against those by whose request and authority he continued to render any service ( *Willis* v. *Dyson,* 1 Starkie, 164 ; Collyer on Part. §§ 388, 389 ; 3 Kent's Com. 45). The difficulty in applying this, however, to the present case is, that the defendant recognized the service up to the 1st of January, 1870, and which, as the plaintiff continued on, would seem to involve the necessity of a formal dismissal thereafter.

For the reasons above given, the judgment should be reversed.

Judgment reversed.