This opinion of Russell, J., at present term is as follows:
Russell, J.
This action is brought to recover for the use of a mare bred to a stallion selected by the defendant, and for the *457 keeping of the colt after it became four months old. The agreement was plainly not to be performed in a year and was, therefore, void by the statute of frauds unless a writing properly subscribed was made taking the case out of the statute. The negotiations were begun by Mr. McCrea in the nature of a proposition in writing by letter, dated April 6th, 1891, sent to Jeremiah. Donovan offering to furnish a stallion free and pay §75 for the colts from each mare when they were three months old, Donovan to keep the colts until four months old if McCrea wished. He names the stallion, Elial Gf., as the one to breed the mares to and says that he has made arrangements with the proprietor of that stallion for the service.
Donovan cannot write, but through an amanuensis advised McCrea that he had no mares to rent at that price, but mentioned the plaintiff and one other as having mares, and showed the communication of Mr. McCrea to the plaintiff. He also advised McCrea in that or another letter that he had made arrangement for breeding two mares and gave such terms and details as enabled the defendant, McCrea, on the 26th of May, 1891, to write to Donovan the following letter:
“ Jeremiah Donovan:
Dear Sir :—Breed the 2 mares you have rented for me at §75.00 each to Elial Gf., and your mare to Van Yalkenburg's horse by Pancoast. I will pay §100 for use of your mare and service. Yan understands I made arrangements for several mares. Yours truly, A. L. McCBEA, Jr.”
In pursuance of this letter plaintiff’s mare was bred to Elial Gf. at a cost of $25, and a consequent lien upon the mare for that sum. A colt was foaled from such service and has been since kept by the plaintiff. No testimony was given on the part of the defense and the only point relied upon is the want of proper writing subscribed by the party to be charged.
The letter of May 26th, 1891, furnishes ample evidence that Donovan had made an agreement with Barnett for the use of the mare which, though not in writing, was communicated to the defendant, McCrea, by a letter of Donovan duly signed in his behalf. This furnished a perfect memorandum of the terms of the contract, was properly subscribed by Donovan for McCrea and was supplemented by McGrea’s answer and letter accepting and acknowledging the contract. The only object of the statute of frauds is to prevent a reliance upon oral contracts in certain cases, and to obtain satisfactory written evidence by some memorandum subscribed by the party to be charged, or his agent, of the terms of the contract itself. The statute itself does not require the contract to be signed, but provides that a note or memorandum of it suffices for the purpose upon which the statute itself is based. Following this undoubted object, it has been frequently held that letters, signed by a party’s agent and sent to the principal, are ample evidence to satisfy the purpose of the statute, and there is no reason why this should not be so The statute of frauds is not a trap, but a wholesome law for the production of written evi* *458 deuce, and is satisfied if that évidence exists. The whole contract may be evidenced by such a writing, as a letter by any agent to a principal, or where there are partial writings, exhibiting a portion of the terms of the contract, such a letter may fúrnish the additional information necessary to complete the contract and to charge the party sued upon such an obligation.
In Peabody v. Speyers, 56 N. Y. 230, our court of appeals held that a letter written by the agent to his ■ principal, even though the principal was undisclosed as a principal to the plaintiff, of which the plaintiff had no knowledge, was sufficient to perfect the momorandum of sale.
In Welford v. Beazely, 3 Atk. 503, Lord Chancellor Hardwiclce held that a letter to a man’s own agent has been deemed a signing within the statute, even though the party never intended to bind himself by it. This is approved by Sugden in his work on Vendors 129 marginal paging. See also Fowle v. Freeman, 9 Ves. 351, 355. Story’s Equity, Sections 755, 6 and 7. Jervis v. Smith, 1 Hoff. 470: Williams v. Bacon, 2 Grey, 391; Gale v. Nixon, 6 Cow. 445.
Within the principle of these authorities, the letters of Donovan and McCrea afforded ample evidence of the contract made. Viewing Donovan either as an agent of McCrea or as the mutual source of method of communication to give information between the parties,, a letter signed for him, with the communications of McCrea, justify the assertion that a note or memorandum of the contract with Barnett was signed by the party to be charged, or his agent, and renders a judgment for the plaintiff necessary.
The case of Haydock v. Stow, 40 N. Y. 363, does not militate against this result. The paper referred to in that case was not designed as a proposal, was not a narration of what had been done and, therefore, neither as a proposition to .be acted upon nor a memorandum of what had been done, did it suffice.
I have taken some pains to examine authorities not referred to J>y either counsel to see if my impressions produced upon the trial were correct, but such examination has only tended to confirm them.
Judgment for plaintiff for the rental price, the service fee of the stallion, and the cost of keeping the colt.
Mayham, P. J.
Upon the facts found by the learned trial judge, which seem to be supported by the evidence we think he reached a correct conclusion, and that the judgment should be n-ffirmp.fl upon the opinion at special term.
Judgment affirmed with costs.
All concur.