## DYKERS *et al. v.* TOWNSEND.

A subscription by the agent of the party to be charged is sufficient under the statute of frauds, though the name or existence of a principal does not appear upon the instrument.

To avoid a contract as against the stock-jobbing act (1 R. S., p. 710, § 6), the burden of proof is upon the party alleging a violation.

*Stebbins* v. *Leowolf* (3 Cush., 143), overruled on this point.

In an action by the vendor of stocks against a vendee refusing to perform his contract to purchase, it was a defence that the vendor did not own, nor was authorized to sell, sufficient stock to fulfill the contract in suit and his previous outstanding contracts. · But evidence falling short of this, as merely showing contracts sufficient to absorb all the stock which the plaintiff had *proved* himself to own, is inadmissible.

APPEAL from the Supreme Court. Action to recover damages for the failure of the defendant to receive and pay for one thousand one hundred shares of the capital stock of the New York and Erie Railroad Company, in performance of three several contracts therefor, bearing date the 2d and 30th May, and 5th June, 1854, one of which was in the following form:

"NEW YORK, May 2, 1854.

"I have purchased of Dykers, Alstine & Co., five hundred (500) shares of the stock of the N. Y. and Erie Railroad Co., at seventy-one (71) per cent, and deliverable in sixty days, buyer's option, with interest at the rate of six per cent per annum. ·

"W. S. HOYT."

The others were in the same form except that one of them was signed by one Brown. It was alleged and proved, under objections made by the defendant, that Hoyt and Brown were brokers, and acted as the agents of the defendant in making the contracts: that they had authority from the defendant to make the purchases, and so informed the plaintiffs when the contracts were made. The defendant was advised by the brokers of each contract when it was made.

The plaintiffs proved that at the date of the several con-
tracts, they were possessed of more than a sufficient number of
shares of the stock to satisfy the contracts respectively, and that
they were possessed of such stock until after the maturity of
the contracts.

When the plaintiffs rested, the defendant moved to dismiss
the complaint on the ground that the contracts were signed by
Brown and Hoyt, in their own names, and that the name of
the defendant nowhere appeared upon them: that parol evi-
dence could not be introduced to show that the defendant was
the person for whose benefit the contracts were made; and that
the plaintiffs had not shown any valid contract between them--
selves and the defendant. The motion was denied, and the
defendant took an exception.

The defendant then offered to prove, for the purpose
of showing the contract void under the stock-jobbing act
(since repealed), that, at the date of the several memoranda
of sale, the plaintiffs had other contracts made by them then
outstanding for the sale and delivery, at buyer's option, as to
time, of a larger number of shares of the stock of the New
York and Erie Railroad Company than they had proved them-
selves to be possessed of, as before stated, and also that they
held as trustees for others (though standing in their own name),
and under agreement to hold the same without sale, a number
of shares of said stock exceeding that which they had proved
to be in their possession. The evidence was rejected, and the
defendant took an exception. The plaintiffs had a verdict for
$20,214.42. Judgment thereon having been rendered at gene-
ral term in the first district, the defendant appealed to this
court.

*Charles O'Conor,* for the appellants.

*Greene C. Bronson,* for the respondent.

HOYT, J. The statute of frauds (2 R. S., p. 136, § 3),
declares that every contract for the sale of goods and chattels,
or things in action for the price of fifty dollars or more, shall

be void unless a note or memorandum of such contract be made in writing, and subscribed by the party, to be charged thereby. As an original question I should have no hesitation in saying, in a case where the contract was entirely executory on both sides, and no part of the consideration had been paid, that it was necessary that it should be in writing under this statute, and be signed by both parties thereto, or their agents, in order to be binding upon either; or, in other words, there being no consideration paid, the promise of one party would be the consideration for the promise of the other, and that both must be in writing to charge either. There is a distinction between this provision and section 8 of 2 Revised Statutes, 135, relating to contracts for the sale of land. There the contract is only required to be signed by the party by whom the sale is to be made (1 Seld., 244). In the case of a contract for the sale of goods, I should say the party to be charged means the vendor upon his contract to sell, and the vendee upon his contract to accept and pay for the goods. But this question does not appear to have been directly raised upon the trial: if it had been it might perhaps have been obviated by the production of a counterpart of the contract signed by the plaintiffs. As there are several authorities which seemingly, at least, give a different construction to this and similar provisions in the former statute of frauds, I do not propose further to discuss the question at this time. (*Russell* v. *Nicol,* 3 Wend., 118 [1 R. L., p. 79, § 15 ]; 3 J. R., 418; 7 Ves., 265; 3 John. Cas., 60; 2 Caines, 117; 14 J. R., 487; 2 Bos. & Pull., 238; 6 East., 307; 26 Wend., 341.)

It is declared by section 8 of 2 Revised Statutes, 136, that every instrument, required by that title to be subscribed by any party, may be subscribed by the lawful agent of such party. The Supreme Court held that the subscription to the contract, by the agent of the defendant, was a compliance with the statute, although the name of his principal did not appear upon the instrument.

It is clear, that the authority of the agent in such a case need not be in writing; and a verbal contract of sale would

be entirely valid, were it not for this statute. If the price of the goods agreed to be sold is less than fifty dollars, no writing is necessary. To this extent the legislature have deemed it prudent to leave the fact of the making of a contract, and of its terms, to the recollection of witnesses. So, whatever may be the value of the goods agreed to be sold, where any part of them has been delivered, or any part of the purchase-money has been paid, this is clear evidence that a contract was consummated between the parties; and the legislature have thought it safe to leave the details and terms thereof to the recollection of witnesses. But to guard against fraud and perjuries, as well as against mistakes and misrecollection of witnesses as to a contract having been consummated between the parties, this statute requires that where the price of the goods, or choses in action, agreed to be sold is more than fifty dollars, and no part thereof has been delivered, and no part of the purchase price paid, a note or memorandum of such contract must be made in writing, and be subscribed by the parties to be charged thereby, or by a lawful agent of such party. In this case, a note or memorandum of the contract was made in writing, and signed by the lawful agent of the defendant; and we think that this was a sufficient compliance with the statute, according to the settled construction which has been given to it. The object of the statute, as it appears to us, is as fully accomplished when the contract is signed by the agent as if it had been signed by or in the name of the principal.

In *Wilson* v. *Hunter* (7 Taun., 295), it was held that the statute of frauds did not exclude parol evidence that a written contract for the sale of goods purporting to be made between A., as seller, and B., the buyer, was on his part made by him only as the agent of C. So in *Cox* v. *Painter* (6 Adol. & Ell., 491), Lord DENMAN said, there is no doubt that evidence is admissible on behalf of one of the contracting parties, to show that the other was agent only though contracting in his own name, and so to fix the real principal. But the agent himself may be charged at the election of the opposite party,

where he contracts in his own name. So in *Trueman* v. *Loder* (11 Adol. & Ell., 589), the plaintiff and defendants were residents, the former of London and the latter at St. Petersburgh; and the defendant had for several years done business in London through an agent, Higginbottom, and in his name. Before the transaction in question the defendant, becoming dissatisfied with Higginbottom, gave him notice that his services were no longer required; after which, Higginbottom contracted to sell tallow to the plaintiff of more than ten pounds value, using his own name as before. He intended to make the contract on his own account; but this was not known to the plaintiff, and he supposed Higginbottom represented the defendant as he had done before. It was held that the defendant was liable for the non-delivery of the tallow. In this case, Lord DENMAN says parol evidence is always necessary to show that the party sued is the person making the contract and bound by it, whether he does so in his own name, or in that of another, or in a feigned name; and whether the contract be signed by his own hand or that of an agent, are inquiries not different in their nature from the question, who is the person that ordered goods in a shop. (8 M. & W., 834; 4 Barn. & C., 664; 12 Wend., 417; 9 M. & W., 79; 14 How. U. S., 446; *Bank of Genesee* v. *Patchin Bank*, 19 N. Y., 312.) It seems to have been too long and too well settled, that an action can be maintained against a principal upon a contract for the sale of goods made by an agent in his own name to be now changed, whatever we may have thought of it as an original question; and this, as well where the contract is within the statute of frauds as where it is not; and the legislature, in the re-enactments of the statute, have not seen fit to make any change of the law in this respect. We think, therefore, that the court was right in treating these contracts as the contracts of the defendant.

The plaintiffs, before resting, proved that at the time the several contracts were made, and for considerable time thereafter, they were the owners and in possession of certificates of shares of the New York and Erie Railroad Company's stock to

as large an amount as those contracted to be sold by said three contracts.

The defendant set up and claimed that those contracts were void under the stock-jobbing act, and for the purpose of establishing such defense, he offered to prove that on the 2d May, 30th May and 5th June, 1854, the dates of the contracts in question, the plaintiffs had other contracts outstanding made by them for the sale by them of shares of the same stock deliverable at the option of the buyer at any time within thirty or sixty days from the dates of such outstanding contracts, and that the number of shares so sold and deliverable under such outstanding contracts exceeded, on those days and on each of said days, the number of shares of stock the certificates of which the plaintiffs had proved themselves to be in possession of on such several days.

The statute declared that " All contracts for the sale of stocks are void, unless the party contracting to sell the same shall, at the time of making such contracts, be in the actual possession of the certificates of such shares or be otherwise entitled thereto in his own right, or be duly authorized by some person so entitled to sell the certificates of shares so contracted for (1 R. S., p. 710, § 6). This evidence would clearly have been proper if the defendant had, in connection therewith, proposed to show that at the time of making the contracts in suit, the plaintiffs did not own, and were not authorized to sell, any stocks other than those of which they had proved themselves to be the owners. If this was all they owned or were lawfully authorized to sell when these contracts were made, and they then had subsisting contracts for its sale to other parties, it would be plainly a violation of the statute for the plaintiff to contract for the sale of the same or an additional amount, which they did not have, to this defendant.

The relevancy of this testimony under the offer must depend entirely upon whom the burden of proof lies in such a case. If on the part of the defendant, then the offer did not go far enough. But if it lay with the plaintiffs, and they having only shown that they owned one thousand one hundred shares,

Dykers *v.* Townsend.

the amount contracted to the defendant, it would then be competent for him to show that the plaintiffs had other prior outstanding and subsisting contracts for the sale of this amount of stock to other parties. The burden would then be shifted to the plaintiffs to show that they owned or were duly authorized to sell an additional amount of stock equal to what they contracted to sell to the defendant. *Stebbins* v. *Leowolf* (3 Cush. R., 143) cited by the defendant, favors his views of the case. It was an action upon a similar contract made in this State to recover the difference in the price contracted to be paid for stock and its value on the day it was to be delivered. The court held that to enable a party to recover on such a contract he must prove not only the making of the contract, but also that the seller was then the owner of the stock which he stipulated to sell at a future day : that it was an element essential to the validity of the contract, without which it could not be enforced against the purchaser.

But we think this doctrine cannot be maintained. If, as has been shown, the contract is a valid one upon its face, and not void by the statute of frauds, all that was necessary for the plaintiff to do, was to prove the execution of the contract; a readiness and offer to perform on his part, and the refusal of the defendant, to entitle him to recover. Such a contract at common law, and in absence of the stock-jobbing act, would be clearly valid; and the courts will not presume that the party contracting to sell stocks was not the owner thereof, for the purpose of rendering the contract void. On the contrary, the presumption is that the contract is valid until the contrary is shown by the defendant. Where a contract is apparently valid upon its face, the party seeking to impeach it must prove that it was made under such circumstances or for such purpose as to render it void, before the defence can be made available. We are quite clear that the burden of proof rested upon the defendant to show that the plaintiffs, at the time they made these contracts, did not own and were not authorized to sell the stock contracted for; or that they did not own and were not authorized to sell the amount mentioned

in these and prior subsisting contracts for the sale thereof made by them.

The offer of the defendant, therefore, did not go far enough; and for that reason the evidence was properly rejected. This view of the case renders it unnecessary to examine or pass upon the effect of the repeal of the stock-jobbing act in 1858, after the trial of the case.

The judgment must be affirmed.

SELDEN, J., was absent; JAMES, J., expressed no opinion; all the other judges concurring,

Judgment affirmed.