Pringle *v.* Spaulding.

*omissus* exists, the court has no power to supply it.   My conclusion is that the people are entitled to judgment.

Judgment accordingly.

———————●●●———————

PRINGLE *vs.* SPAULDING.

The statute of frauds does not require that the authority of the agent contracting for the sale of lands should be in writing.  It may be established by parol, and it will be inferred, where the principal adopts the act of the agent.

An authority to sell, given to one whose occupation is that of a real estate broker, authorizes the broker to sign the contract and bind his principal.

In an action to recover damages for the breach of a contract to sell real estate, the proper rule of damages is the amount paid by the purchaser, on executing the contract, together with the difference between the contract price and the actual value of the premises, at the time the contract was to have been performed.

THIS is an action to recover damages for the non-performance of an agreement for the sale of real estate. The agreement was signed on behalf of the defendant by one Poillon, a real estate broker, who testified that he called on the defendant, who told him " that the price was $5500; that $4000 could remain on the property, but if I could sell it so as to get $2500 cash in place of $1500, he would be very much pleased; " and after the agreement was signed, Poillon met the defendant and told him he had sold the property agreeably to his terms, receiving $2500 in money instead of $1500.  He said "all right," and passed on. Again, he testified: "I called on the defendant to get a

chance to sell it.   He authorized me to sell it and gave me
the terms."   Again, " I wrote him a letter before I saw him.
He called at my office then, and that was my first inter-
view with him.   That was when he gave me the terms as
I have stated, and nothing further took place between us
before the signing of the contract that I can recollect. ⸱ He
wanted me to sell it on these terms, if I could."   On the
day of the contract, the broker gave the defendant writ-
ten notice of it.   At the conclusion of the plaintiff's testi-
mony the defendant moved for a verdict on the ground
that no authority had been shown in Poillon to execute a
written contract for the sale of the premises, and that no
ratification of such contract by the defendant had been
shown.   Which was denied, and the defendant excepted.
.   At the conclusion of the case, the court charged the jury
that if authority was given to Poillon, as he stated, to sell
the property, he had power to execute the written contract
and bind his principal.   To this the defendant excepted.

The court further charged the jury that if the defend-
ant was liable at all, he was bound, not only to refund to
the plaintiff the $100 paid by him, but was liable also for
the difference between $5500, the contract price, and the
actual value of the premises at the time the contract was
to have been performed.   To this ruling and charge of the
court the defendant duly excepted.

The jury rendered a verdict in favor of the plaintiff for
$250.

⸱ The defendant thereupon made a motion for a new
trial upon the minutes of the judge, which motion was
denied by the court, and the defendant duly excepted to
such decision.

⸱⸱ The defendant appealed from the judgment, and from
the order denying motion for a new trial.

*Geo. G. Reynolds*, for the appellant.   I. The court
charged that "if authority was given to Poillon, *as he*

Pringle *v.* Spaulding.

*states*, to. sell the property, he had power to execute the written contract and bind his principal." This leaves out any question as to ratification of the contract, (about which there was a conflict of evidence,) and makes the plaintiff's case to stand on the agent's original authority. We submit the charge was wrong. There was nothing in the terms of Poillon's employment, as stated by himself, giving him more than the usual powers of a broker. The defendant gave him the terms, in part, and wanted him to sell it, if he could. Sell it how? of course as a broker; that was his business; not as attorney, for he was not employed as such. It is the most ordinary expression to speak of employing a broker to sell, but of course it is perfectly well understood that his business is simply to negotiate. Even the signing of a contract is not a *sale*, strictly speaking, because real estate is sold only by deed. This shows that the term "sell" is used in another sense. Poillon knew, at the time, that the property was in the hands of another broker for sale, and might be sold by him. He does not dispute the defendant's testimony that he so told him at the time of the employment. The terms of the mortgage were not fixed; there were other particulars to be adjusted by the contract, and which were not left to him. It was, therefore, erroneous to charge the jury, as matter of law, that absolute power was given to close a contract, without reference to the principal; to say the least, it was for the jury to construe the language in the light of the circumstances, and say whether the employment was intended by the defendant, or accepted by Poillon as giving such power. A broker, *as such*, has no power to sign the contract. He has performed his whole duty (and therefore exhausted his powers) when he produces a suitable customer upon the terms given. If he goes further it must be as *attorney*, and not as broker. (*Coleman* v. *Garrigues*, 18 *Barb.* 60, 67, 68. *Glentworth* v. *Luther*, 21 *id.* 145, 147.) In both these cases the broker

Pringle *v.* Spaulding.

was employed "to sell." In the first case some proof was given of custom, but that is not made a point in the decision; in fact, it is not even alluded to in the opinion. Such proof is supererogatory. (*See last case, p.* 147; *also Barnard* v. *Monnot,* 33 *How. Pr.* 440.)

II. The charge, as to the rule of damages, and the refusal to charge as requested on that subject, was erroneous. In the absence of fraud or willful violation of the contract the rule is the same as in eviction after conveyance, to wit, the recovery of the price paid, with interest. (*Baldwin* v. *Munn,* 2 *Wend.* 399, 405, 406. *Peters* v. *McKeon,* 4 *Denio,* 546. *Conger* v. *Weaver,* 20 *N. Y. Rep.* 140.) The defendant refused to convey to the plaintiff, because he was, or supposed himself to be, under superior obligations to another party who paid $250 less. It may be said it was his own folly to create conflicting obligations; so it is a man's own folly to agree to make title when he has none; but the above rule applies in all cases where there is an absence of fraud or willful violation of contract.

*D. P. Barnard,* for the respondent. I. It is not necessary that the authority of an agent to make a written contract should be in writing. An authority to sell, carries with it the power to make a binding contract. (*Dykers* v. *Townsend,* 24 *N. Y. Rep.* 57. *Nelson* v. *Cowing,* 6 *Hill,* 338. 2 *Kent's Com.* 796. *McWhorter* v. *McMahon,* 10 *Paige,* 386.)

II. The rule of damages as laid down by the court was correct. (*Trull* v. *Granger,* 4 *Seld.* 115. *Brinckerhoff* v. *Phelps,* 24 *Barb.* 100. *Bush* v. *Cole,* 28 *N. Y. Rep.* 261.)

*By the Court,* GILBERT, J. The statute of frauds does not require that the authority of the agent contracting for the sale of lands should be in writing. It may be established by parol, and it will be inferred, where the princi-

Pringle *v.* Spaulding.

pal adopts the act of the agent. (*More* v. *Snedburgh,* 8 *Paige,* 606. *McWhorter* v. *McMahan,* 10 *id.* 386. *Lawrence* v. *Taylor,* 5 *Hill,* 107. *Newton* v. *Bronson,* 3 *Kern.* 594.) Whether an authority to sell, given to one whose occupation is that of a real estate broker, authorizes the broker to sign the contract, is the question presented.

In *Coleman* v. *Garrigues,* (18 *Barb.* 68,) this court held that "an agent within the meaning of the statute of frauds, who can sign the name of the owner of lands to a contract of sale, is not one who has a mere authority to make a bargain for a sale, but one who is made the owner's agent to *sign* his name to the contract. That agency is not included in a mere authority to sell." A similar view was expressed in *Glentworth* v. *Luther,* in this court, (21 *Barb.* 145,) and by the Court of Appeals in *Barnard* v. *Monnot,* 33 *How. Pr.* 440.) The cases of *McWhorter* v. *McMahan,* and of *Lawrence* v. *Taylor,* (*supra,*) afford some countenance to this position. In those cases the authority, which one partner possesses by virtue of the partnership relation, in respect to land belonging to the partnership, was evidently deemed insufficient to authorize him to sign a contract of sale in the name of his copartner. But it has been repeatedly held that an express power to sell, given to an auctioneer, embraces the requisite authority to sign the contract of sale. Thus in *Tallman* v. *Franklin,* (14 *N. Y. Rep.* 591,) this language is used: "The auctioneer was the agent of the owner of the lots, to effect the sale, and was lawfully authorized to sign the writing required by the statute of frauds, to give validity to it." In *Champlin* v. *Parish,* (11 *Paige,* 411,) the chancellor held that "the auctioneer was the agent of the complainants in making the sale, and that he was probably authorized by them to execute a written agreement to the purchaser as such agent, *so as to make the contract binding on them.*" And in *Dykers* v. *Townsend,* 24 *N. Y.*

Pringle *v.* Spaulding.

*Rep.* 57,) which involved the effect of that provision of the statute of frauds relative to contracts for the sale of goods, which requires a note or memorandum of the contract, to be subscribed by the party to be charged thereby, or by the lawful agent of such party, it was held that the subscription of an agent, who had authority to purchase stock, "was a sufficient compliance with the statute, according to the settled construction which had been given to it." The broad proposition, on which the case of *Coleman* v. *Garrigues*, was decided, therefore, cannot be sustained consistently with these cases, or with the principle which is frequently asserted as being elementary in the law of agency, namely, that an authority to do an act, includes an authority to employ whatever means are necessary to accomplish a due execution of the power.

We have been much impressed with the argument, that even an express power to sell, given to a real estate broker, means less than the words import, and ought to be restricted within the limits of his ordinary duty as a broker, which is, to find a purchaser who is willing to accept the terms of the seller. But it is difficult to assign any satisfactory reason why any different effect should be given to the language of the power, when given to a broker, than when given to an auctioneer. The duty of both is to procure a purchaser, the auctioneer by attracting a crowd and inducing bids, and the broker by hunting for a purchaser and persuading him to purchase. The lack of the specific power to sign the contract can be inferred with no more reason in the one case than in the other. This construction is, no doubt, attended with danger of frauds and perjuries, but it must rest with the legislature to change the law, if any change shall be necessary.

If these views are correct, the defendant was bound to perform the contract, and his having incurred a conflicting obligation in respect to the subject of the sale, affords

no excuse for his refusal to perform, in a legal point of view.

The rule of damages laid down by the court was, therefore, correct.

The judgment and order denying a new trial should be affirmed, with costs.

[KINGS GENERAL TERM, December 19, 1868. *Lott, J. F. Barnard, Gilbert* and *Tappen,* Justices.]