By the Court.—Monell, J.
The error of the appellant’ s counsel was in supposing that the written paper which was given in evidence could not contain or prove the agreement between the parties merely because it was never signed by them.
A contract for performing work and furnishing materials may be by parol, and need not necessarily be in writing. If the terms of the agreement are reduced to writing, and are assented to by the parties, they as effectually prove the contract as if the paper had been signed. The reducing to writing and signing a contract, is needed only when it might otherwise be affected by the statute of frauds.
The essential of all contracts is the assent of the parties ; and whether it is expressed orally or by writing signed by the parties, in either case it, except as it may *432 or may not be affected by the statute of frauds, becomes the agreement of the parties.
The referee has found in substance as a fact, that the paper introduced in evidence, purporting to contain the terms of the contract, did in fact contain the precise agreement between the parties, and of which agreement the specifications, also given in evidence, formed a part; and if such finding is supported by the evidence, it reduces the questions between the parties to the single one of performance.
There may possibly be some conflict in the evidence as to whether the plaintiff ever assented to the terms specified in the written paper; and it may be that some of the evidence tends, at least, to establish that the plaintiff performed the work only upon the terms contained in his written estimate.
But even if that was so, the finding of the referee would not be disturbed, upon the well-established rule, that findings of fact upon disputed evidence is conclusive.
An examination, however, of the evidence satisfactorily, I think, supports the finding.
The plaintiff testified that he called on the defendant to see if he would take an estimate from him to do the carpenter’s work and furnish the materials. “He appointed a time for me to call at Ms office and get the plans and specifications, from which I made an estimate for the work and materials. I received information from my foreman to call at- Ms office about 8 o’ clock in the evening, as he wanted to see me. He told me that I was not the lowest—that there were five envelopes lying on his desk, and that-1 was one of that five; he had selected mine first of that five. I told him I was ready to ialce the contract according to plans and specifications/ he then asked me if I had any objection to go" on with the work for a few days, to give him time to prepare a contract, as he was in a hurry for some of the carpenters’ *433 materials. The next day I asked him where he wanted the work done in such a hurry.; he said the basement window jambs, lintels, and centres. I told him it was hard to do so much work the next day; he said he must have them. I told him I would endeavor to get them ; to. make my word good I took them there next day. I then went on and furnish ed materials as required, and furnished labor. After I had been to work for a few days I asked whether he had made the contract yet; he said he had not, but. would in a few days, on going to Mr. Jardine’s office, who drew the specifications and plans. I waited a few days longer, and asked him if he had them drawn up ; he told me to go to Mr. Jardine’s office, that he had them there ; he showed me a contract in the legal form, two copies. After reading it over I stated to Mr. Jardine—I read over the contract ; it was composed of seven payments, to make the sum of my estimate $22,500—I told him the only objection I had to signing this contract was that the sixth payment required everything to be done and finished to enable me to get the sixth payment. I told him that the wording of the agreement should be altered; that there was nothing for me to do to get the seventh payment, and the two payments together was too large an amount to accept on finishing the job. I would state that Mr. Jardine said that in the third payment I would receive $4,000 when the building was ready for lathing, but he would not alter them without first consulting Mr. Mead, as they were drawn partially at his request. As soon as I again saw Mr. Mead I spoke about the contract, and told him how I wanted it; he told me he was going to Mr. Jardine’s in a few days and he would attend to it. In a few days I spoke to him again; he said he had, and told me to go there. I went to Mr. Jardine’s office; Mr. Jardine told me Mr. Mead had taken the contract home with him. When I saw Mr. Mead again I spoke to him about executing the contract. He said he did *434 not care for the contract, but would give me all the money l wanted on a two days’ notice ; that his money was all in bonds—all he had to do was to send them down town and get the money for them ; I told him I would like to have the contract executed, as it was better for myself; something turned up and interrupted the conversation, and we separated. He stood on the opposite side of his building in Fifty-fifth Street, in company with a gentleman; I went to him again and spolce about having the contract executed. ‘You two gentlemen’ (meaning me and Mr. McLean, the mason) ‘are anxious to have the contract executed.’ He told us he would give us money on two days’ notice; he did not want to execute a contract.” He further testified that he was to furnish the materials according to the specifications.
The defendant- testified that the plaintiff made an estimate for the work and materials; “that something was said about a contract, and as to the terms; Mr. Dutch inquired how I proposed to pay, or in what amounts, as the work progressed; I told him that I would go to my architect and have a contract made out stipulating the payments ; he assented to it, and said he would call there and see for himself as to the amount; I had stated before who my architect was. I had a conversation with Dutch afterwards, and he told me he had been to Jardine’s office, and found the contract or agreement correct, except as to two payments; he said the third payment was too small, and the fifth or sixth—I am not certain which—was too large ; he said the third payment ought to be $3,000 instead of $2,000, and the fifth or sixth payment should be $4,000 instead of $5,000 ; I told him I would go and see the architect and talk it over with him; I then saw Mr. Dutch afterwards, and requested him to go and see the architect; Mr. Dutch said he was ready and would sign the papers as soon as the payments were altered from $2,000 to $3,000 *435 for the third payment, and the fifth or sixth payment from $5,000 to $4,000, the third payment increased, and the fifth or sixth reduced. I gave instructions to the architect to alter the payments ; the third payment was altered from $2,000 to $3,000, and the sixth payment was altered from $5,000 to $4,000; these alterations were made in my presence ; I informed Mr. Dutch of such alterations ; don’t remember exact date ; I notified him since the day after the alterations ; I notified him two or three times within six or eight days.”
It appears that the only objection the plaintiff offered to the written paper was that the sixth payment was unsatisfactory. In all other respects, it abundantly appears that both parties assented to the terms specified in the written paper, and that the plaintiff worked under the plans and specifications referred to in, and annexed to, and which, it was therein agreed, should form a part of it.
The objection to the payment was afterwards removed by an alteration of the paper.
I think, looking at all the evidence, that the referee was justified in finding that the agrément was such as was contained in the written paper and specifications.
Having thus found, there was an abundance of evidence that the contract had not been substantially performed by the plaintiff. Such performance was a condition precedent to any recovery by the plaintiff (Smith v. Brady, 17 N. Y. R. 173).
But, independently of the fact that the written paper contained the terms of the agreement, the parties all agree that the work was to be done and materials supplied according to the plans and specifications. The plaintiff says so distinctly. Such specification contains the following:
‘£ Materials and Workmanship.—All materials not otherwise specified to be the best of their several kinds, and the work to be executed in a good, workmanlike *436 manner. Any carpenter work or materials shown on-drawings and necessary to complete the buildings, although herein omitted, must be done by the contractor without extra charge.” /
The above having been assented to by both parties, would be enough to let in evidence of poor work and bad materials. And the result would be the same.
We have looked at the numerous objections to evidence, but do not find any such error as would require a reversal of the judgment.
We think it should be affirmed.
Curtis and Sedgwick, JJ., concurred.