By the Court.—Sedgwick, J.
There is no doubt that a broker, employed orally to sell or to buy, receives thereby implied authority to bind his employer, by making a written contract, of the kind designated by the employment. If the broker have received similar authority from the other party he may make the written contract for both (Story on Agency, §§ 28, 58, 60 ; Smith’s Merc. Law, 3 Am. Ed. p. 620 ; Hadoch Stow, 40 N. Y. 368; Bush v. Cole, 28 N. Y., 269 ; Pringle v. Spaulding, 53 Barb. 21; Dyken Townsend, 24 N. Y. 59. In Hadoch v. Stow Judge Hunt said that Coleman v. Carrigues, 18 Barb. 60, was not well decided).
In this case, however,, the broker’s power to make the written contract could not depend upon any previous employment to buy for the defendants. At the first the defendants Jiad employed the broker to buy, at a named price. If, under that employment, he had bought at that price, he might have made a written contract on those terms. He did not buy at that price; and to give him fresh implied authority there must be a new employment. The testimony does not show any other employment to make a contract.' After the broker failed to buy he brought the parties together. They made the agreement. He was present and took part in the bargaining, but he did not make the oral contract. Even if the principals were present, it is possible that he might have received authority to conclude the contract for them, but as a fact, in this case he was not so authorized. What the parties did they did for *319 themselves, and the presence of a broker does not delegate a power to Mm. If, without previous authority, he wrote in their presence a contract, it is a question of fact as to whether the parties knew what he was doing and assented to his doing it. The mere act of writing would not show the knowledge, but the jury should consider it in connection with the other facts of the case. If the parties on either side did not know what the broker was writing they were not bound by his individual and unauthorized act. They had a legal right to make a verbal agreement by which they should be only morally bound. The broker could not subject them to legal liability against their will.
If, indeed, the facts would justify the jury to think that the brokers wrote the contract with the knowledge and assent of the defendants, the same facts should be considered in determining, if it were not also to be inferred, that the broker was also to write a contract, which should bind the plaintiffs. If, by the understanding of the parties, he was to do that, then a sold note to be made by him would be the consideration intended by the parties to bind the defendants upon the bought note. For, although an oral promise to sell, invalid in law, is enough consideration to support the written promise to buy, still, if the actual consideration was meant to be a valid promise in writing, it must be proven by the writing (Justice v. Lang, 52 N. Y. 323; 42 N. Y. 493); and the acceptance of a contract by the seller which states that the buyer is to buy is not conclusive that the seller has promised to sell. It is only one fact to be considered. I, therefore, think that here there was a question of fact, on which the' plaintiff had a right to go to the jury as to the consideration. There was no conclusive proof that there was an oral promise to sell as the consideration, but it was for the jury to pass upon the point.
Under no circumstances can a broker bind his prin *320 cipal, by a writing, to any other contract, than such as he was employed to make (Bush v. Cole, supra), or in this case any other contract than such as was orally made between the principals (Davis v. Shields, 26 W. 341; Aguine v. Allen, 10 Barb. 74; affirmed 7 N. Y. 543 ; Pitts v. Bechett, 13 M. & W. 751).
There does not seem to be a reason for applying to a sale of a cargo of fruit any other rule of law than is applied to a sale of a cargo of iron or saltpetre or grain, and an undivided interest in any of them can be bought and sold, as can the whole interest. The present contract was executory for the purchase of one-eighth of two cargoes of fruit to arrive. Upon arrival there would have been no difficulty in making the proper delivery, either by a fair division of the fruit, or, if that were impracticable, by a delivery of a bill of sale to pass the title in prcesenti (Story on Sales, § 311, et seq.). The case is only an extreme 'illustration of the inconvenience of a tenancy in common of chattels. Probably it presents no new kind of hazard or doubt (Schouler Per. Pro. 194-203; 1 Add. on Ship. 98).
On the testimony here we may suppose, that the principals made an oral contract to buy and sell the one-eighth interest, and further, as the broker haltingly said, on the usual terms, or by the usual contract. The plaintiff gave evidence to show that the practice of the trade was, that after undivided interests had been sold, of cargo to arrive, upon arrival the seller took and kept possession of it, sold it, and divided the losses or profits. I see no need of ascertaining how far usage, properly so called, considered as a fact, which entered into the contract, can define it. Here the terms of the oral contract, apart from the addition ' of the words “ usual terms,” were unambiguous, and by them the parties meant to buy and sell. Indeed, the claim of plaintiff is based upon the treating the de *321 fendants as the owner of one-eighth of the cargoes. The substance of the contract as plaintiffs claim was, that in the manner pointed out by the contract, the sellers as cb-tenants in common were entitled to sell the whole, and to pay themselves the consideration out of the proceeds, if sufficient, and to pay over to defendants, or to charge them in the proper case, but the foundation of all was that by the agreement the defendants were to be the owners of one-eighth of the chattel. In Coleman v. Eyre, 45 N. Y. 38, the contract had no regard to the title of the coffee. It only referred to the profits and losses.
As the contract was in a certain event to clothe the defendants with the rights of owners, a usage which would annul these rights, not being part of the contract (unless adding the words on the usual terms or by the usual contract made it so), cannot vary it.
In Wheeler v. Newbould (16 N. Y. 392), the defendant was pledgee of promissory notes, without special leave to sell at private sale, and it was held that as a mere pledgee had no right by law to do this, a usage in the city, to sell such pledges at private sale, after a demand of payment and notice that it would be sold for the best price, was no part of the contract, as it was in contradiction to its fair and legal import. Markham v. Jaudon (41 N. Y. 235), is a similar case. In Wadsworth v. Allcott (6 N. Y. 71), it was held that a receipt, which by its clear terms created a bailment, could not be shown by usage to import a sale (The Mutual Safety Ins. Co. v. Hone, 2 N. Y. 235). In Dawson v. Kitell (4 Hill, 108), the term “as freight,” Nelson, J., said, might be shown by usage to import a sale, but no such usage was proved. This case cannot be deemed to deny the correctness of the rule laid down in Goodyear v. Ogden (4 Hill, 104), for they were decided by the same court.
*322 The usage in this case would have materially changed the rights of defendants as owners. Their right to an undivided eighth of the fruit, and their right to take possession of it, in cases provided by law, would be changed to giving the plaintiffs an exclusive right to retain the custody of the whole in all cases.
We must now consider what was the effect upon the contract of adding the words “ on the usual terms” or “by the usual contract. ’ ’ The proper application of these words is not clear and certain. They might be used to refer only to a simple contract of sale, and to mean that the terms on which payment and delivery were to be made, were to be the usual terms. They might, also, in view of surrounding circumstances, without violence, mean that the interests of the co-owners should be settled as they were usually in the trade. In what sense they were used or assented to by the defendants was a question of fact for the jury. If in the former, the usage could not vary the contract to deliver and pay, so as to make it a contract under which there wa.s to be no delivery and payment. To permit the jury to find that the words were used in the latter sense, they must first have proof before them that the defendants knew what the practice was and'meant to refer to it by the general words. In the absence of such knowledge there would not be enough to justify the jury in saying that a contract of sale, clearly expressed, was meant to be turned into something else by adding, on the usual terms. If by usual terms, the defendants referred to the practice of which they had knowledge, it is not necessary that the practice should amount to a legal custom or usage (Remsen v. Holland, 59 N. Y. 618). Even if the defendants did have knowledge of the practice, they might have meant simply to purchase, and whether they did so mean was for the jury to say.
I think there was enough to take the case to the *323 jury on the point of the authority of the broker, to make the writing in behalf of the defendants, of the consideration, and of what the oral contract actually was. On all these points, a subsequent promise of the defendants was relevant testimony. After the sale of the cargoes by the plaintiffs, they presented to the defendants a bill charging them with the one-eighth of the loss. The defendants promised to pay it, excepting such part of the loss as came from a sale of part of the cargo to a person alleged not to be of good credit. This promise was evidence of what the parties had theretofore agreed upon. It would not make the defendants liable if the agreement referred to by it was void under the statute of frauds, but it would be of some weight to show that the terms of the oral agreement had referred to the practice of the trade. If it were shown that the defendants knew that the broker had written for them a contract, the promise would ratify his act (Commercial Bank v. Warren, 15 N. Y. 577), and bind them by the terms of it, but only if before the promise it was shown that the defendants knew that the particular terms referred to the practice (Baldwin v. Burow, 47 N. Y. 199).
As to this, the character of the promise was evidence, upon proof that defendants knew that there was a written contract made for them.
I am therefore of the further opinion that the plaintiffs had a right to go to the jury upon the question of ratification. This would not dispense with proof of due consideration.
If the contract between the parties were the writing signed by Brandigee, it could be enforced in an action against the defendant alone. I do not see any joint interest which required the presence of other defendants as co-owners. If they were joined, the issues would be several between them.
*324 On the whole case, I think the exceptions should be sustained and a new trial had, with costs to plaintiffs to abide event.
Curtis, Ch. J., and Speir, J., concurred.