By the Referee.
The defendants are respectively owners of two adjoining lots of land, known as 47 and 49 Oak street, in the city of New York. On or about November 12, 1884, they, by their authorized agent, entered into an agreement with plaintiff that he should furnish materials and erect upon such premises a building covering both of said lots, in accordance with plans and specifications theretofore prepared by an architect, for the sum of $9,000. The terms of such contract were agreed upon, except that the times and manner of payment of said $9,000 were left for future determination, and it was understood that the contract should be subsequently completed and signed by the parties. A written, contract complete, with the exception aforesaid, was on or about said date prepared and sent to the defendants. They retained it in their possession until December 24, 1884, when it was completed, by inserting the times and manner of payment, and signed and delivered by the plaintiff and by the' defendant Sarah Welsh. In the interval between his employment, on or about November twelfth and December twenty-fourth, when this contract was executed, the plaintiff commenced work under the plans and specifications, and did substantially all the work upon which the present claim is founded. The contract, as completed, calls for the payment of $1,000 when the first tier of beams was laid. Plaintiff produced the architect’s certificate of the prosecution of his work to this point, demanded payment of said sum, which being refused, he filed a mechanic’s lien and has brought this action to foreclose the same.
There is no doubt as to the authority of the agent who made the original agreement with plaintiff; this is admitted of record. The claim of defendants is that the instrument as originally submitted to them was complete; that according to their understanding the $9,000 was to be paid in a lump sum when the work was finished; that the provisions for payment in instalments were inserted at the time of execution without their knowledge, and that they were fraudulently induced to execute a paper which did not embody their intentions. The evidence, however, does not *406 bear out this contention. In the first place, it would be an unusual thing for a builder to agree to such a proposition. The invariable custom of the trade is to require and receive payments in installments at different stages of the work. Then the contract as originally forwarded to defendants was on its face incomplete. . It called for the payment of $9,000 “in manner following,” and a blank was left after the words quoted. It also appears that some discussion was had in the presence of defendants as to whether the first payment should be made $2,000 or $1,000, and also that the contract was read over before being signed. Furthermore, defendants did not disclaim the liability to pay in instalments until some time after the execution of the contract, for it is shown that attempts were made with their knowledge and consent to mortgage the premises, so that plaintiff might be secured in finishing the building. The testimony, the admitted facts and the surrounding circumstances all tend to uphold the contract.
The contract was signed by the plaintiff and by the defendant Sarah Welsh, but not by the defendant Mary Welsh. The latter, however, was present at the execution of the instrument. Plaintiff testifies that she was in the adjoining room, “which has got a door or partition into it, and she leaned right across it.” Mr. G-rue, the architect, avers that she was in the next room with the door open between. She herself says that she was in the adjoining room and that she “left it (the business) to her sister and “Jimmy” (Baldwin). As she thus admits her sister’s authority it seems reasonable to hold that Sarah Welsh in signing the contract acted both for herself and as agent for Mary Welsh. An agent may bind his principal by his personal signature, even in a case within the statute of frauds and even though the principal’s name does not appear on the instrument. Dykers v. Townsend, 24 N. Y., 57. If this be so, a fortiori, an agent’s personal signature, is sufficient in a contract like the one here involved in which the principal is named and described as a party thereto. This case differs from Dykers v. Townsend in that the defendant who signed acted both in her own behalf and as agent. But it was the intention of all the parties that she should act in such dual capacity, and if it were incumbent upon plaintiff to establish a contract in writing duly signed, it might be held, as counsel for plaintiff contends that the case fell fairly within the doctrine of Dykers v. Townsend, and that the paper was, in contemplation of law, duly signed by Mary Welsh, as it was in fact by Sarah Welsh. It is not, however, necessary to invoke this theory in order to bind the defendant who did not actually sign. In Dutch v. Mead (4 Jones & Spencer, 427; affirmed, without opinion, 59 N. *407 Y., 628), it is held, in regard to a contract like the present one, not within the statute of frauds that a written instrument, although not signed by the parties, will, if orally assented to by them, constitute the agreement between them. Mary Welsh was present on December 24, 1884, when the terms of this contract were discussed. If she did not make herself personally familiar with all its details, her authorized agents, Mr. Baldwin and Miss Sarah Welsh, did do so. She knew that she was a party and a necessary party to it, and that it affected her interests. If she then “left it all to her sister and “Jimmy,” and allowed it to be completed, executed and delivered by such agents, it certainly must be held that she assented to it and that she and her property are bound thereby.
• This action is to foreclose a mechanic’s lien filed under the contract. It has been urged with some little plausibility that as the work for which the hen was filed was completed before the payments were agreed upon and before the written contract was executed, this work cannot be said to have been done under such contract. The effect of the execution of the writing was to make the first payment of $1,000 due immediately, but I cannot see that this consideration affects plaintiff’s right to acquire a hen or to enforce it. The action taken on December 24, 1884, did not constitute the making of a new contract, but simply the completion and formal execution of a contract which, since November 12, 1884, had been in existence in a sufficiently complete state for plaintiff thereunder to commence and prosecute his work up to the laying of the first tier of beams.
Indeed defendants now claim that the contract was then complete, and as it then existed, must be taken as expressing the whole intention and agreement of the parties. It had been in Miss Welsh’s possession since about that time, complete except as to the provisions for payment in question. Under the doctrine of Dutch v. Mead (supra), I think it may be said that the contract was in existence as a written one during the period. The writing contained so much of the understanding between the parties as had then been arrived at and it had been assented to by plaintiff and by defendants’ duly authorized agent, Baldwin. But even on the theory that the contract existed only in parol between the commencement of the work and the signing of the paper, it was still the same existing contract that was completed and formally executed. A written contract supersedes a previous oral understanding in the sense that parol evidence is inadmissible to contradict or vary the instrument. But merely to reduce to writing an existing contract is not to make of it a new contract or a different contract. It will be the same agreement though evidenced *408 in a different manner. In this case the original contract was preserved in all its features when the writing was signed and there were added simply provisions as to payments which were contemplated by all at the time of the beginning of the work, though the amounts thereof were left to future determination. It was agreed on or about November twelfth that the building should be erected according to plans and specifications for $9,000, and also that the times and manner of payment should subsequently be fixed. On December twenty-fourth the parties confined themselves to carrying out the original intentions of November twelfth which latter is the date the instrument bears. Under these circumstances, I think it may properly be held that the work and materials were performed and furnished under and in accordance with the contract, as thus finally completed and executed, and that j)laintiff was entitled to demand the first payment immediately, upon production of the architect’s certificate.
In regard to the claim made by plaintiff for $570.86 in addition to the $1,000 secured by the contract it is difficult to see how it can be substantiated under the evidence. Probably the amounts made payable at different stages of the work are not to be taken as absolute valuations up to such points, but I think they must be considered as presumptive valuations. As matter of fact the work actually done did not progress much if any beyond the first tier of beams. If plaintiff is not bound by the contract valuations, he must at least prove affirmatively that the installments named are not correctly proportioned to the various stages of the building, show definitely what proportion the work up to a given point bears to the total work required and claim such proportion of the total contract price. In other words, he must prove, not a general quantum meruit, but a quantum meruit under and with reference to the contract. The only evidence bearing upon the question is a paper submitted by plaintiff with objection which he averred contained a detailed statement of all work done and materials furnished and the charge for them, amounting in the aggregate to $1,570.86. He does not even give his opinion as an expert of the value of the services and materials, but merely the charge he makes for them. This testimony I should consider insufficient to support even a general claim by way of quantum meruit; obviously it is insufficient to support the extra claim made herein.
(Remarks on questions of fact omitted.)
Allen, J., confirmed the report. Judgment for the amount secured by the contract and directing sale of premises to satisfy same was accordingly entered.
There was no appeal.