Hamilton Odell, Referee.
In May, 1874, Jacob Lorillard and W. P. Clyde & Co., in order to consolidate “ their respective interests in the Philadelphia and New York Transportation Line,” agreed together to form a corporation under the laws of the state of New York, with a capital of $300,000, of which the two contracting parties should hold equal shares. The whole of the capital stock was to be issued in payment for certain vessels, specifically named, of which Mr. Lorillard was to contribute two, and Clyde & Co. were to contribute nine. The agreement, which was to take effect on or before July 1, 1874, contained these two provisions:
1st. Ci W. P. Clyde & Co. to have the management of said corporation and business.”
2d. “ The corporation to assume lease of Lorillard’s Philadelphia wharf, and assume leases of piers 33 and 33 1-2 East river, New York, at present rental.”
The corporation contemplated by the said agreement was formed under the name of The Philadelphia and New York Steam Navigation Company; the said vessels *17 were transferred to it; the capital stock was issued; Clyde & Co. assumed the management. The Philadelphia wharf above referred to, was, at the date of said agreement, held by The Lorillard Steamship Company, of which the said Jacob Lorillard (the plaintiff herein) was the president and substantial owner, under a lease to it from the Philadelphia Steamship Dock Company. It is charged in the complaint that Clyde & Co., “ though duly requested so to do, neglected and refused to have said lease assumed by the said Philadelphia and New York Steam Navigation Company, or to pay or cause to be paid the sum of $5,500, the annual rent of said wharf, which became due on the 8th day of April, 1875.” It is further alleged that in 1877 the lessor of the said wharf brought suit against The Lorillard Steamship Company to recover the said rent, which suit Clyde & Co. had notice of and opportunity to defend ; that judgment was rendered therein against said Lorillard Steamship Company, and was paid, and that the claim or cause of action of the said Lorillard Steamship Company against Clyde & Co., growing out of the transactions thus briefly alluded to, was assigned and set over to the plaintiff. He brings this action as such assignee.
The plaintiff’s first proposition is that Clyde & Co. covenanted with Jacob Lorillard that they, Clyde & Co., would cause the proposed corporation to assume the lease of the Philadelphia wharf and relieve the Lorillard Steamship Company from further liability for rent thereunder, and that such covenant is enforceable by said Lorillard Steamship Company under the rule declared in Lawrence v. Fox, 20 N. Y. 268. . That case has been the cause of many experiments in the courts, and productive of an abundant and odd lot of law suits. It has been explained and criticised and limited and questioned, but never, overruled. Thirty years have elapsed since it was decided, yet the principle upon which it rests is still a matter of uncertainty and dispute. It has been followed as a controlling authority in all cases present *18 ing similar facts, but the doctrine of the case was established with difficulty and has been yielded to with reluctance (46 N. Y. 82), and the courts - have steadily refused to extend its application to new cases (82 N. Y. 385). “ We prefer,” Judge Finch says in Wheat v. Rice, 97 N. Y. 302, “ to restrict the doctrine of Lawrence v. Fox within the precise limits of its original application.” All that the case decides is “ that where one person loans money to another upon his promise to pay it to a third party to whom the party so lending the money is indebted, the contract thus made by the lender is made for the benefit of his creditor, and the latter can maintain an action upon it without proving an express promise to himself from the party receiving the money.” Allen, J., in Garnsey v. Rogers, 47 N. Y. 240.
A right of action does not accrue to a third party because a promise has been made by one to another for his benefit. There must be some obligation or duty owing from the promisee to the third party which would give the latter a legal or equitable claim to the benefit of the promise, or an equivalent from the promisee personally. This was distinctly held in Vrooman v. Turner, 69 N. Y. 280. The court said that “ in every case in which an action has been sustained there has been a debt or duty owing by the promisee to the party claiming to sue upon the promise. Whether the decisions rest upon the doctrine of agency, the promisee being regarded as the agent of the third party, who, by bringing his action adopts his acts, or upon the doctrine of a trust, the promisor being regarded as having received money or other things for the third party, is not material. In either case there must be a legal right, founded upon some obligation of the promisee, in the third party, to adopt and claim the promise as made for his benefit.”
It is argued by the learned counsel for the plaintiff that the only limitation put by the case last cited upon the broad rule of Lawrence v. Fox, is in requiring that *19 the third party shall not be a stranger to the transac•tion, and that there shall be some privity between him and the promisee, whereby the latter will derive a benefit from the execution of the promise. Benefit to the promisee, however, is not the basis upon which any of these cases rest. It is the promise made for the benefit of the third party that the courts enforce, and the privity between him and the promisee which the law requires, is that which arises from some debt or duty due from the latter to the former, which the promisor engages to discharge. In other words, there must be, first, an existing claim against the promisee in favor of a third party, and second, an engagement by the promisor to discharge his own liability to the promisee by the payment or satisfaction of such claim. In the absence of either of these conditions, the doctrine of Lawrence v. Fox has no application.
I am unable to find in this case any debt or obligation due from Lorillard to his Steamship Company which the defendants, by the agreement of May, 1874, undertook to perform, nor is it claimed that any such existed.
The plaintiff’s second ground of contention is that the defendents became directly liable to The Lorillard Steamship Company upon this agreement upon “ general principles of agency.” It is not suggested that the agreement, as executed, is the agreement of the company, but the claim is, as I understand it, that certain provisions contained therein were inserted for the company’s benefit, and that, in respect of those provisions, Mr. Lorillard, in making the agreement, acted as the company’s agent and in its behalf. One of these provisions Avas that relating to the assumption by the proposed new corporation of the lease of the Philadelphia wharf. It is not alleged in the complaint that Mr. Lorillard, in anything that he did in connection with this transaction, acted or assumed to act as the agent of his Steamship Company. In respect of the lease, and to that extent, the complaint says “ that the said agree *20 ment was made in behalf of and for the benefit of the said Lorillard Steamship Company and the said Clyde & Co., in and by said agreement, undertook and agreed with and for the benefit.of the said Lorillard Steamship Company, that the said Philadelphia and New York Steam Navigation Company should, when organized, assume said lease,” etc. A similar allegation might have been, and probably was, made by Lawrence when he sued Fox upon the promise which Fox had made to Holly. The rule relied on by the learned counsel for the plaintiff, that a principal may adopt and enforce in his own name a contract made in his behalf in the name of his agent, is not denied, but it does not seem to be applicable here. The act of the agent—that is, the making of the contract in such a case—must be the act of the principal, and although the name of the principal may not appear on the face of the transaction, yet, as Judge Folder says in I. P. & C. Co. v. Tyng, 63 N. Y. 655, “ evidence will be -received to let in a party not apparent in the contract; ” and it makes no difference whether the principal seeks to enforce the contract, or the other party seeks to hold him liable upon it. Briggs v. Partridge, 64 N. Y. 357. But whenever the contract is the contract of the party who signs it, a third party, who claims to enforce one of its provisions on the ground that it was made and intended for his benefit, must seek his remedy, if he has any, in the way pointed out in Lawrence v. Fox.
It seems to me too plain to admit of serious dispute that the agreement of May, 1874, was the personal agreement of Mr. Lorillard. His counsel calls attention to the fact that “prior to the time of the going of the contract into effect, Mr. Lorillard received formal authority from the directors of the company to carry out the provisions of the contract.” There is a trifling inaccuracy in this statement, as will appear by reference to the proofs. The resolution of the directors was as follows: “ On motion of Jacob Lorillard it was resolved that the *21 company shall sell the steamers Vindicator and Fanita to The Philadelphia and New York Steam Navigation Company for the sum of $170,000, and that /the president shall deliver proper documents or bills of sale for the same.” And also—“ That Jacob Lorillard shall sell ánd dispose of the steamers Mediator and North Point, or any other property this company may possess, at such times and such prices as he may see fit, and deliver proper documents and bills' of sale of same, and close up the affairs of this company and its indebtedness to himself.” This resolution was adopted on the 17th of June, a month after Lorillard had signed his agreement with Clyde. It does not appear that the nature, or even the existence, of that agreement was made known to the directors, and it would seem that it had then already been partially performed by the parties to it by the formation of the new corporation which it contemplated. Certainly there was nothing in the resolutions authorizing Mr. Lorillard to exchange the two steamers •first named for stock of such new company at par. The fact is, that there was very little of The Lorillard Steamship Company besides Mr. Lorillard. He owned nearly the whole of its stock and he controlled its action. He was its creditor in a large amount, and the hope of securing this indebtedness and the desire to close up an unprofitable business, were leading considerations in his trade with Clyde & Co.
The plaintiff’s third proposition is that “ the contract was fully executed by The Lorillard Steamship Company as to the part of the consideration to be furnished by it, and that the defendants, having accepted performance from the latter, are estopped from denying its rights to enforce so much of the contract as was intended for its benefit.”
This assumes, erroneously, as I think, that the steamship company was, in fact, a party to the contract, and bound to at least a partial performance of it. The language of the contract is, “ They (Lorillard and Clyde) *22 shall form a corporation.” “ They (Lorillard and Clyde) shall contribute property.” “Jacob Lorillard puts in the steamers Vindicator and Fanita.” No part of the consideration was to be furnished by the Lorillard Company. That company incurred no liability under the agreement. Clyde could have had no complaint or remedy against it if Lorillard had refused to perform the agreement upon his part. It is true that the said steamers belonged to the company, and that the company conveyed them to the new corporation at Mr. Lorillard’s request, but clearly such conveyances were not made in fulfillment of any obligation assumed by, or resting upon, the company, nor can it be fairly said that they were accepted by Clyde or the new corporation otherwise than as a performance by Lorillard of his personal engagement. There is no pretense in the complaint that the steamship company did anything towards the performance of this agreement. On the contrary, it is substantially admitted that the transfer of the vessels was the act of Lorillard, the allegation being that “the plaintiff transferred, or caused to be transferred, to the said corporation the steamers mentioned in said agreement, as required by the terms thereof, and in all respects fully kept and performed said agreement and the conditions thereof on his part.” And in the action between these same parties in the city court of Brooklyn, in which plaintiff recovered judgment against these defendants for a large amount in 1883, one of the findings of the court on which that judgment was found was, that pursuant to this very agreement “ the plaintiff transferred to the said The Philadelphia and New York Steam Navigation Company the steamers Vindicator and Fanita mentioned in said agreement, and that 1700 shares of the stock of said company of the par value of $100 each, were issued to him therefor on or about June 20, 1874.”
It is my opinion that neither of the grounds of re *23 covery contended for by the plaintiff is tenable, and the motion to dismiss the complaint is, therefore, granted.
Glover, Sweezy & Glover attorneys, Richard L. Sioeezy and Asa Bird Gardiner of counsel for appellant, on the questions considered in the opinion, argued:—
I. It is obvious that the clause in the contract respecting the assumption of the lease was an obligation on the part of William P. Clyde & Co. As the latter, under the terms of the contract, was to be placed in the exclusive control of the corporation, it is perfectly plain that it only could have the power, and upon it only could rest the obligation to perform this clause of the contract.
II. The contract was intended to enure, by both parties, to the benefit of The Lorillard Steamship Co., and the latter had, and the plaintiff as its assignee has, a legal status thereunder, upon the principle of Lawrence v. Fox, 20 N. Y. 268.
III. The right of The Lorillard Steamship Co. to sue upon the contract may also be maintained upon general principles of agency. The contract not being under seal, a suit upon it is not necessarily confined to the parties named therein. . The Code, § 449, expressly authorizes “ a person' with whom or in whose name a contract is made for the benefit of another ” to sue in his own name as trustee of an express trust, thus distinctly recognizing the principle contended for. And it has been frequently held that this section is permissive only, and that the party actually interested in or intended, to be benefited by the contract may maintain the action on his own behalf. Hubbell v. Medbury, 53 N. Y. 98 ; Considerant v. Brisbane, 22 Ib. 389 ; Morgan v. Reid, 7 Abb. 215; Erickson v. Compton, 6 How. 471; St. John v. Griffith, 2 Abb. 198. This is true, whether the fact that the person is acting as agent appears upon the face of the contract or not, and in no way conflicts with the principle that parol evidence cannot be admitted to *24 vary the terms of a written contract. In such case the terms and conditions of the contract are not in dispute. William P. Clyde & Co. contracted with Mr. Lorillard, knowing to a certain extent he was acting in behalf of The Lorillard Steamship Company. The principle of law, however, would not have been different if the fact of agency had not been disclosed. An undisclosed principle may be held liable upon and may claim the benefit of written parol contracts made by his agent in his own name. Dykers v. Townsend, 24 N. Y. 57; Briggs v. Partridge, 64 Ib. 357. The rule is very clearly stated in the latter case where the court of appeals says it is settled law “ that the principal may be charged upon a written parol executory contract entered into by an agent in his own name within his authority, although the name of the principal does not appear in the instrument and was not disclosed, and the party dealing with the agent supposed he was acting for himself. And this doctrine obtains as well with respect to contracts which are required to be in writing as those where a writing is not essential to their validity.” A different rule applies where the contract is under seal. lb.
IV. Defendants also became liable to The Lorillard Steamship Company, upon the ground that the contract was fully executed by The Lorillard Steamship Company as to the part of the consideration to be furnished by it, and that the defendant, having accepted performance from the latter, is estopped from denying its right to enforce so much of the contract as was intended for its benefit. The steamers were conveyed by The Lorillard Steamship Company to The Philadelphia and New York Steam Navigation Company. In December, 1874, possession of this dock was delivered by The Lorillard Steamship Company to William P. Clyde & Company, and on April 3d, 1875, the lease, with formal assignment thereon by The Lorillard Steamship Company to The Philadelphia and New York Steam Navigation Company, *25 stating that such assignment was made in pursuance of this very contract, was sent to William P. Clyde & Co. It would certainly be an anomaly in the law if William P. Clyde & Co. could be permitted to claim, under these circumstances, that The Lorillard Steamship Company was a stranger to this transaction, with no rights upon its part to enforce performance by William P. Clyde & Co. of the obligations which the latter assumed in return for the consideration thus received.
Boardman & Boardman, attorneys, and E. O. Board-man of counsel for respondents, on the questions considered in the opinion, argued:—
I. As the only cause of action that is set forth in the complaint is that the covenant to assume the lease was made for the benefit of The Lorillard Steamship Company and therefore came within the doctrine of Lawrence v. Fox; and as the plaintiff sets forth no cause of action except as the assignee of The Lorillard Steamship Company, the only question that will be considered in these points will be as to whether or not The Lorillard Steamship Company, under the facts proved, had a cause of action against the defendants.
II. The evidence submitted does not show a cause of action in favor of The Lorillard Steamship Company against the defendants under the principle of Lawrence v. Fox for the following reasons: 1. The Lorillard Steamship Company was not a party to the contract, and is not mentioned either in the clause in question or elsewhere in the contract. The wharf is referred to as “ Lorillard’s wharf,” and no mention is made of any interest of the company therein or in the lease. 2. There is no proof in the case showing that at the time the contract was entered into the defendants or either of them had any notice or knowledge that The Lorillard Steamship Company was interested in the property or in the lease, or that either of them'had any knowledge of the existence of such a corporation. 3. There is no proof *26 that there was any debt or duty owing from Jacob Lorillard to The Lorillard Steamship Company which would enable The Lorillard Steamship Company to claim the right to enforce the promise.
An examination of the authorities will show that all these elements are essential in order to bring a case within the doctrine of Lawrence v. Fox.
Johnson v. Morgan, 58 N. Y. 496; Merril v. Green, 55 Ib. 270; Simson v. Brown, 68 Ib. 359; Garnsey v. Rogers, 47 Ib. 240; Vrooman v. Turner, 69 Ib. 283. The disinclination of the courts to extend the doctrine of Lawrence v. Fox appears in almost every case in which it is cited. Wheat v. Rice, 97 N. Y. 302; Pardee v. Treat, 82 Ib. 385 ; Ætna National Bank v. The Fourth National Bank, 46. 82; Turk v. Redge, 41 Ib. 201; Hutchins v. Miner, 46 Ib. 456; Merril v. Green, 55 Ib. 270; Simson v. Brown, 68 Ib. 356. There is no testimony in the case that any debt, duty or obligation was due or owing from the plaintiff to The Lorillard Steamship Company at the time the contract was made. The Lorillard Steamship Company is not named in the covenant in question, nor is it mentioned elsewhere in the contract, and there is no proof that either of the defendants had any notice or knowledge either of the existence of that corporation, or that the covenant in question might benefit it, or that it had any interest in the property or in the lease. Under this state of facts and under the authorities above cited it is clear that, as the plaintiff sets forth in the complaint no cause of action except one arising under the principle of Lawrence v. Fox, and as the defendants were called upon by the complaint to meet no claim except one arising under the doctrine of that case, and as the plaintiff in his proof has failed to show the elements necessary to bring him within the rule therein laid down, the referee was right in dismissing the complaint and the judgment should be affirmed.
Per Curiam.
The judgment should be affirmed with costs upon the opinion of the referee.